**UNITED STATES**

v.

**Airman Basic Arthur N. BRAY, Jr.,
United States Air Force.**

**ACM 32692.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 5 Dec. 1996.

Decided 27 Jan. 2000.

Appellate Counsel for Appellant: Lieutenant Colonel Ray T. Blank, Jr. (argued), Colonel Jeanne M. Rueth, Colonel Douglas H. Kohrt, and Lieutenant Colonel Kim L. Sheffield.

Appellate Counsel for the United States: Major Kenneth A. Arnold (argued), Colonel Anthony P. Dattilo, Colonel Michael J. Breslin, Lieutenant Colonel Ronald A. Rodgers, Major J. Robert Cantrall, and Captain Martin J. Hindel.

Before SNYDER, Chief Judge, YOUNG, Senior Judge, and SPISAK, Senior Judge.

## OPINION OF THE COURT

YOUNG, Senior Judge:

The appellant was charged with rape, but court members convicted him of the lesser-included offense of attempted rape. Article 80, UCMJ, 10 U.S.C. § 880. The convening authority approved the adjudged sentence of a dishonorable discharge and confinement for 15 years. The appellant assigns seven errors, one of which is dispositive. Finding that his prosecution violated the appellant's speedy-trial rights, we set aside the appellant's conviction and sentence, and dismiss the charge with prejudice.

### I. Background

In the early morning hours of 4 June 1995, the appellant, then a master sergeant, surreptitiously entered a house on Edwards Air Force Base, California, where 5–year–old VG was sleeping on the couch in her Barbie sleeping bag. VG's mother and stepfather were out that night, leaving VG in the charge of a 14–year–old babysitter, who was also sleeping. VG knew and trusted the appellant as a close family friend. The appellant smuggled VG out of the house quietly, reassuring her he had come to take her to her mother. Instead, the appellant bundled VG, sleeping bag and all, into his car and drove her 20 miles away to his off-base quarters. On the way, he instructed her to strip naked, and then threw her nightshirt out the window. When they arrived at his quarters, the appellant struck VG repeatedly across the face, spanked her nude body so severely that it bruised, bit her on the buttocks, sexually molested her, and threatened to kill her if she ever told anybody. He was apprehended as he drove back onto base with VG sobbing, terrified, and still nude, huddled in her blood-soaked sleeping bag behind the seat where the appellant had instructed her to hide.

VG was taken to the base hospital where a sexual assault protocol was performed. The examining physician found a laceration to the inner surface of VG's labia majora and a pubic hair inside her vagina. Her hymen was intact. An examination of the appellant revealed blood under his fingernails, on the tip of his penis, and on the inside of his underwear. The appellant was immediately placed in pretrial confinement.

In July 1995, the government preferred charges, the most serious of which alleged the appellant kidnapped VG, committed an indecent act upon her body by "placing his finger inside her vagina," and threatened to kill her if she told anyone. A new staff judge advocate arrived at the base in August and, after reviewing the evidence, asked the investigators to continue to explore the possibility the appellant had raped VG. The initial charges were referred to a general court-martial in October 1995. In early January 1996, pursuant to a pretrial agreement that capped his confinement at 20 years, the appellant pled guilty to those original charges. After a thorough inquiry, the military judge accepted the plea and entered findings of guilty. During the sentencing proceedings, a defense witness suggested the appellant may have committed the offenses because of a psychotic reaction to a bug spray. The military judge halted the proceedings and advised the appellant that this testimony raised the possibility of a defense of lack of mental responsibility that called in question the providence of his guilty plea. After a recess in order to consult with his counsel, the appellant withdrew from his pleas of guilty. The military judge granted a continuance so the parties could prepare.

In March 1996, after the completion of various blood and DNA tests, and consultation with a physician with expertise in child sexual abuse, the government preferred an additional charge of rape against the appellant. Because the appellant had already been arraigned on the other charges, the rape charge could not be joined with them without the appellant's consent. Rule for Courts–Martial (R.C.M.) 601(e)(2). The appellant refused to agree to joinder. On 15 May 1996, the rape charge was referred to trial.

Meanwhile, the appellant negotiated another pretrial agreement on the original charges, but at a substantial cost. The new convening authority was less charitable and would only agree to cap the confinement at 30 years. On 23 May 1996, having abandoned the insecticide-psychosis defense, the

appellant pled guilty to the original charges. The approved sentence was a dishonorable discharge, confinement for 30 years, forfeiture of all pay and allowances, and reduction to E–1.

In December 1996, the appellant was tried on the rape charge. He did not assert his first conviction as a double jeopardy bar to trial.[1] Court members convicted him of the lesser-included offense of attempted rape, and sentenced him to a dishonorable discharge and confinement for 15 years.

The findings and sentence resulting from the first trial were affirmed on appeal at both this Court (ACM 32346, 30 June 97) and the United States Court of Appeals for the Armed Forces (49 M.J. 300 (1998)).

## II. Speedy Trial

At trial, citing Articles 10 and 33, UCMJ, R.C.M. 707, and the Speedy Trial Clause of the Sixth Amendment, the appellant moved the court to dismiss with prejudice the specification alleging the rape of VG. The military judge made essential findings of fact and concluded that the Government had not violated the accused's speedy trial rights. On appeal, the appellant asserts the military judge erred in denying his speedy trial motion, but provides us little more in analysis than a reference to trial defense counsel's brief. His arguments on appeal fail to differentiate the standards that apply to each of the separate grounds on which he bases his claim. We note the chronologies submitted by the parties and the military judge did not follow the format recommended by our superior court. *See United States v. Ramsey,* 28 M.J. 370, 372, 374 (C.M.A.1989).

■ Whether an accused received a speedy trial is a legal question that we review *de novo.* But, we give substantial deference to the military judge's findings of fact. *United States v. Doty,* 51 M.J. 464, 465 (1999).

When any servicemember is placed in pretrial confinement, "immediate steps shall be taken" to bring him to trial. Article 10, UCMJ, 10 U.S.C. § 810. In an attempt to provide clear guidelines to military practitioners that would satisfy an accused's speedy-trial rights under both the Sixth Amendment and Article 10, UCMJ, the President promulgated R.C.M. 707, which was based on standards established by the American Bar Association. *Manual for Courts–Martial, United States (MCM),* A21–40 (1995 ed.).

The Government is required to bring an accused to trial within 120 days after the earlier of the preferral of charges, the imposition of pretrial restraint under R.C.M. 304(a)(2)–(4), or, entry of a reservist on active duty. R.C.M. 707(a). "When charges are preferred at different times, accountability for each charge shall be determined from the appropriate date" under R.C.M. 707(a). R.C.M. 707(b)(2). An accused is brought to trial at arraignment, when he is "called upon to plead." *Doty,* 51 M.J. at 465; R.C.M. 707(b)(1). But, pretrial delays approved by the military judge or convening authority shall be excluded from accountability. R.C.M. 707(c).

The first question we must answer is when did the speedy trial clock begin to run. At trial, the appellant claimed that it started with his pretrial confinement on the original charges. The prosecution asserted that the clock did not start on 4 June 1995 because the appellant had not been placed in pretrial confinement for the offense of rape. The military judge concluded that the rape allegation was "inextricably intertwined with the original charges" and the speedy trial clock began to run for both sets of charges on 4 June 1995, the day the appellant was confined.

■ We hold that, when an accused is placed in pretrial confinement as a result of a particular incident, the speedy-trial clock begins to run for all offenses that the prosecution knows, or reasonably should know, were part of that incident. *Cf. United States v. Talavera,* 8 M.J. 14, 17 (C.M.A.1979) (holding speedy-trial clock starts under Article 10,

---

1. On 27 October 1999, we heard oral argument, at the United States Air Force Academy, on whether the trial on the rape charge was barred by the Double Jeopardy Clause of the Fifth Amendment. As the speedy trial issue is dispositive, we need not answer the double jeopardy question.

UCMJ, for offenses other than those resulting in the accused's pretrial confinement, when the Government had in its possession, substantial information on which to base the preferral of that charge). The plain language of R.C.M. 707(b)(2) seems to support the government's contention that the R.C.M. 707 speedy trial clock did not start for the rape charge until it was preferred—the appellant was not confined for rape, but for kidnapping, sexual assault, and communicating a threat. We believe such a reading of R.C.M. 707 is too narrow and would emasculate the speedy-trial provisions of R.C.M. 707. The prosecution would have no incentive to promptly charge an accused with any offenses other than the minimum necessary for him to be confined.

■ In this case, the appellant was placed in pretrial confinement for kidnapping, sexually molesting, and threatening VG. Under these circumstances, we find the fact that the sexual molestation may have been rape as opposed, or in addition, to an indecent act to be of little consequence. The essential facts of the incident were the basis on which the appellant was incarcerated. When the appellant was placed in pretrial confinement, the prosecution knew or reasonably should have known of the possibility that the appellant raped VG—the appellant had blood on his penis and on the inside of his underwear and VG had suffered a laceration inside her labia major.

Next, we must determine which, if any, delays attributable to the original charges may be excluded from the speedy trial calculation for the rape charge. The prosecutor suggested, and the military judge determined, that, because the original charges and the rape charge were "inextricably intertwined," delays excluded from the speedy-trial calculation for the original charges should also be excluded from the speedy-trial calculations for the rape charge. We disagree. It does not matter that the same delays would have existed had all the offenses been tried together—they weren't

processed together or tried together. We find the first excludable delay for the rape charge occurred between 8 March 1996 and 12 April 1996 when the appellant requested a delay in the Article 32 investigation. At that time, the speedy trial clock had already run some 278 days.

The speedy-trial clock began to run again on 12 April 1996, when the appellant waived the Article 32 investigation. On 7 June 1996, the referral of the rape charge to trial was served on the appellant. An accused cannot be brought to trial, over his objection, within five days of the service of charges. Article 35, UCMJ, 10 U.S.C. § 835. So, the speedy-trial clock continued to run from 7–13 June 1996. No judge was available to try the case until 30 June 1996. Thus, the clock continued to run. The speedy trial clock stopped on 30 June, when the military judge granted a delay until 30 July. The total elapsed days from pretrial confinement until the appellant was brought to trial (arraigned) was 422 days, 65 of which were excludable (35–day delay granted by investigating officer and 30–day delay granted by military judge). Thus, it took the Government 357 days to bring the accused to trial.[2]

■ As the Government failed to comply with the appellant's right to a speedy trial, the remedy is dismissal of the affected charge. R.C.M. 707(d). Lest anyone fear that our decision is overly harsh and impedes the Government's ability to investigate and prosecute cases, it is important to remember that the prosecution could have saved the case with one easy step. They could have asked the convening authority to approve a pretrial delay in processing the case so the evidence could be scientifically analyzed. R.C.M. 707(c). Had the convening authority granted the delay, after giving the appellant an opportunity to contest the need for one, it is doubtful that we would have found a violation of R.C.M. 707. We take no position on whether or not such a delay would have violated statutory or constitutional speedy-trial provisions.

---

2. One could argue that the speedy-trial clock stopped on 23 May 1996, when the accused was sentenced to confinement on the original charges, as this ended his pretrial confinement.

That would only reduce the total days from pretrial confinement to arraignment from 357 to 319 accountable days and would not change the results of this case.

In determining whether the dismissal should be with or without prejudice, the trial court is required to consider, among other factors, (1) the seriousness of the offense, (2) the facts and circumstances that led to dismissal, (3) the impact of re-prosecution on the administration of justice, and (4) any prejudice to the accused. R.C.M. 707(d). We believe these are also the appropriate factors to consider on appeal.

(1) The seriousness of the offense: The charged offense of rape is a serious offense that favors retrial.

(2) The facts and circumstances leading to dismissal. This was a lengthy violation of the speedy-trial rule—it took the Government 237 accountable days above and beyond the 120 days allotted by R.C.M. 707(a) to bring the accused to trial. During this time, the prosecution negotiated two pretrial agreements with the appellant for other offenses arising out of the same incident. We believe these facts favor dismissal with prejudice.

(3) The impact of reprosecution on the administration of justice. As the appellant is already serving a sentence which includes confinement for 30 years for other offenses arising from the same incident, the inability to re-prosecute him for the attempted rape would have a negligible impact on the administration of justice.

(4) Prejudice to the accused resulting from the delay. At trial, the appellant claimed he was prejudiced because he spent a year in pretrial confinement, the delay caused the memory of the only witness to fade, and the delay allowed the Government time to discover unfavorable character evidence against him. The defense appellate brief fails to cite any prejudice. The first two assertions of prejudice are without merit. The appellant would have been in confinement, both pretrial and post-trial, as a result of the other charges of which he was convicted, and there is no evidence that the witness's memory faded. While the prosecution obviously used the extra time to develop its case, the appellant has not alleged how the delay impaired his ability to defend himself. *See Barker v. Wingo,* 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. Johnson,* 17 M.J. 255, 259 (C.M.A.1984).

In balancing these factors, we are convinced that the appellant's conviction of attempted rape must be dismissed with prejudice. In evaluating the four R.C.M. 707(d) factors under the facts of this case, we conclude that the extraordinary delay in bringing the appellant to trial and the minimal impact re-prosecution would have on the administration of justice outweigh the seriousness of the offense and the inability of the appellant to demonstrate prejudice. The findings of guilty and the sentence are set aside and dismissed. The court-martial order issued as a result of this opinion should reflect that the appellant was arraigned on two rape specifications, not just the one reflected in the current order.

Chief Judge SNYDER and Senior Judge SPISAK concur.

## Appendix

| Date | Events | Julian Date | Elapsed Days | Gov't Days |
|------|--------|-------------|--------------|------------|
| 04 Jun 95 | Accused placed in pretrial confinement | 155 | 0 | 0 |
| 07 Mar 96 | Rape charge preferred Article 32 scheduled for 8 March | 067 | 277 | 277 |
| 08 Mar 96 | IO grants delay in Article 32 until 12 April | 068 | 278 | 278 |
| 12 Apr 96 | Accused waives Article 32 | 103 | 313 | 278 |
| 15 May 96 | Rape charge referred to court-martial | 136 | 346 | 311 |
| 23 May 96 | Appellant confined as a result of trial on original charges | 144 | 354 | 319 |
| 07 Jun 96 | Referral served on accused Trial set for 30 June | 159 | 369 | 334 |
| 13 Jun 96 | Statutory delay of 5 days—Article 35, UCMJ | 165 | 375 | 340 |

| Date | Events | Julian Date | Elapsed Days | Gov't Days |
|------|--------|-------------|--------------|------------|
| 30 Jun 96 | First available judge date | 182 | 392 | 357 |
|  | Date trial scheduled |  |  |  |
|  | Judge grants delay in trial until 30 July |  |  |  |
| 30 Jul 96 | Accused arraigned on rape charge | 212 | 422 | 357 |