UNITED STATES

v.

**Airman First Class Jarwanza
A. PROCTOR, United
States Air Force.**

ACM 34532.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 27 Feb. 2001.

27 Jan. 2003.

Appellate Counsel for Appellant: Colonel Beverly B. Knott and Major Kyle R. Jacobson.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Lance B. Sigmon, Major Jennifer R. Rider, and Major Cheryl D. Lewis.

Before VAN ORSDOL, BRESLIN, and STONE, Appellate Military Judges.

## OPINION OF THE COURT

BRESLIN, Senior Judge:

The appellant was convicted, in accordance with his conditional pleas, of one specification of attempt to unlawfully enter the dormitory room of a female airman, one specification of wrongful use of marijuana on divers occasions, three specifications of battery (offensive touching) of female airmen, two specifications of unlawful entry into dormitory rooms of female airmen, and one specification of indecent acts with a female airman, in violation of Articles 80, 112a, 128, and 134, UCMJ, 10 U.S.C. §§ 880, 912a, 928, 934. The sentence adjudged and approved was a bad-conduct discharge, confinement for 11 months, and reduction to E–1.

The appellant argues that he was denied his right to a speedy trial guaranteed by the Sixth Amendment, Article 10, UCMJ, 10 U.S.C. § 810, and Rule for Courts–Martial (R.C.M.) 707. The appellant also argues that his plea to indecent acts cannot stand, because his conduct only constitutes indecent exposure. We find error, and set aside the findings and sentence.

### Speedy Trial

In August 2000, law enforcement agencies at Keesler Air Force Base (AFB) investigated the appellant for the wrongful use of marijuana and drunken driving. On 15 September 2000, while action on those reports was pending, Senior Airman (SrA) JM reported to security forces that the appellant had entered her dormitory room early that morning without permission, and had assaulted her while she was in bed by grabbing her thigh. On 18 September 2000, SrA TW advised security forces investigators that the appellant unlawfully entered her dormitory room at 0530 while she was sleeping, sat on her bed, and grabbed her shoulder.

On 19 September 2000, the appellant's commander ordered him into pretrial confinement, based upon his repeated use of marijuana and the unlawful entries and assaults reported by SrA JM and SrA TW. The pretrial confinement hearing was scheduled for the next day, but was delayed by the pretrial confinement review officer (PCRO) at defense request until 27 September 2000. In his 28 September 2000 report, the PCRO concluded there was probable cause to believe the appellant committed the offenses, and that continued pretrial confinement was required under the circumstances.

The security forces investigators continued the investigation, and discovered several other female airmen who variously alleged attempted unlawful entry, assault, and indecent acts by the appellant. The investigators finished their report on 12 October 2000. Their clerk provided a copy to the appellant's com-

mander, but failed to send a copy to the base legal office. Notwithstanding the almost daily contact between the base legal office and the security forces investigators, the report's absence was not discovered until late November 2000. The legal office received a copy of the report on 21 November 2000.

Thereafter, the acting chief of military justice at the legal office interviewed witnesses and attempted, unsuccessfully, to negotiate a date with the defense counsel for the formal pretrial investigation under Article 32, UCMJ, 10 U.S.C. § 832. On 15 December 2000 an unrelated case dropped off the docket and the defense counsel offered to hold the appellant's investigation that day. The prosecutor declined, however, saying he could not assemble the necessary witnesses on such short notice. On 17 December 2000, after 89 days of pretrial confinement, the appellant submitted a written demand for speedy trial.

The parties eventually agreed upon 12 January 2001 as a suitable date for the Article 32 investigation. With the date set, the government preferred charges against appellant on 4 January 2001. By that time, the appellant had been in pretrial confinement 107 days.

On 8 January 2001, the staff judge advocate (SJA) asked the special court-martial convening authority to exclude all the time from the date of approval until 1 March 2001 for speedy trial accountability purposes. The request noted that the government had 120 days from the date of pretrial confinement to bring the appellant to trial, and that "the 120–day point is 17 January 2001." The SJA discussed the difficulties associated with the processing of the case, and the unusually heavy court-martial workload facing the legal office at that time. He asked that the convening authority exclude all the time until 1 March 2001, so that the government could "process Airman Proctor's case to trial."

A copy of the request was served upon the defense counsel; nonetheless the convening authority approved the request the same day. On 12 January 2001, the defense counsel submitted his written objections to the grant of delay, noting the appellant's demand for a speedy trial. On that same day, the appellant waived his right to an investigation

under Article 32, UCMJ. The convening authority later considered the defense counsel's objection but stood by his earlier decision to exclude the time for speedy trial purposes.

On 17 January 2001, the commander forwarded the charges to the general court-martial convening authority. The charges were referred to trial by general court-martial on 26 January 2001, and served upon the accused on 29 January 2001. On the following day, the parties agreed to a 27 February 2001 trial date. On 2 February 2001, the chief circuit military judge approved the agreed-upon trial date.

The appellant was arraigned on 27 February 2001, after 161 days of pretrial confinement. At trial, the appellant moved to dismiss all charges for violation of his right to a speedy trial. The military judge took evidence on the matter, and ultimately denied the motion. Thereafter, the appellant entered a conditional plea of guilty to all the offenses, preserving the speedy trial issue for appeal. The appellant now urges this Court to find that the military judge erred in denying the motion to dismiss for a violation of his right to a speedy trial.

A military member's right to a speedy trial arises from several sources. *United States v. Becker*, 53 M.J. 229, 231 (2000); *United States v. Kossman*, 38 M.J. 258 (C.M.A.1993); *United States v. Vogan*, 35 M.J. 32, 33 (C.M.A.1992). Rule for Courts–Martial (R.C.M.) 707, promulgated by the President, requires that a person must be brought to trial within 120 days of preferral of charges, imposition of pretrial restraint, or activation of a reservist for court-martial purposes. *United States v. Birge*, 52 M.J. 209, 210 (1999). Article 10, UCMJ, requires that, if a person is placed in arrest or confinement, "immediate steps shall be taken … to try him or to dismiss the charges." Additionally, our superior court holds that the Sixth Amendment applies to courts-martial, and guarantees "the right to a speedy and public trial." *Id.* at 211.

▉ Whether an appellant received a speedy trial is an issue of law, which we review de novo. *United States v. Doty*, 51

M.J. 464, 465 (1999). However, we give substantial deference to the military judge's findings of fact, and will reverse them only for clear error. *United States v. Taylor*, 487 U.S. 326, 337, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988); *United States v. Edmond*, 41 M.J. 419, 420 (1995), *aff'd*, 520 U.S. 651, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997). We review the decision whether to grant a delay for an abuse of discretion and reasonableness. *See* Drafter's Analysis, *Manual for Courts–Martial, United States (MCM)*, A21–42 (2000 ed.); *United States v. Longhofer*, 29 M.J. 22, 28 (C.M.A.1989); *United States v. Nichols*, 42 M.J. 715, 721 (A.F.Ct.Crim.App. 1995).

The appellant alleges a denial of his right to a speedy trial under R.C.M. 707, Article 10, UCMJ, and the Sixth Amendment. We will consider each of these.

A. R.C.M. 707.

R.C.M. 707 provides that an accused "shall be brought to trial within 120 days" of the imposition of pretrial confinement. The purpose of the specific time limit in the rule is to protect the appellant's right to a speedy trial under the Sixth Amendment and Article 10, UCMJ, and society's interests in the prompt administration of justice. *MCM*, A21–41.

It is possible to exclude certain periods of time from the 120–day limit in the rule. A previous version of R.C.M. 707 excluded time periods if they fell into specific categories. The system proved unworkable—and was roundly criticized by appellate courts—because it was not clear what was properly considered a delay until the matter was raised in a motion to dismiss the charges. *See United States v. Dies*, 45 M.J. 376, 377–78 (1996) (and cases cited therein). Under the current version, pretrial delays may be excluded if "approved by a military judge or the convening authority." R.C.M. 707(c). The purpose of the rule change was to "eliminate after-the-fact determinations as to whether certain periods of delay are excludable." *MCM*, A21–41. As this Court has previously noted, "After-the-fact exclusion of time from the government's speedy trial accountability is no longer an option." *Nichols*, 42 M.J. at 721 (citing *United States v.*

*Youngberg*, 38 M.J. 635, 638 (A.C.M.R.1993); Captain Eric D. Placke, *R.C.M. 707 and the New Speedy Trial Rules*, THE REPORTER, Vol. 18, No. 4 (December 1991)).

The military judge found two periods of excludable delay in this case: one granted by the special court-martial convening authority; the second granted by the chief circuit military judge. The appellant challenges the correctness of the military judge's ruling for each of these.

■ We find the military judge erred in excluding all the time from 8 January until the referral of charges on 26 January 2001, because the convening authority did not properly grant a "delay" under R.C.M. 707. Under R.C.M. 707(c), the convening authority is empowered to grant delays, not blanket exclusions of time. In *Nichols*, 42 M.J. at 721, this Court held that a "delay" under R.C.M. 707 was "any interval of time between events." As noted by trial defense counsel, the SJA's request that the special court-martial convening authority exclude all the time from 8 January until 1 March 2001 was not a request for a delay, because it did not address an interval between events. Instead, it was a request for a blanket exclusion of time while the case would continue to be processed. Indeed, the SJA's request anticipated that the case would proceed through the Article 32 investigation, forwarding of charges, referral, and trial during the period purportedly excluded. However, it is not logical that the government can be delayed and moving forward at the same time. The convening authority's grant of a blanket exclusion of time, rather than a delay, exceeded his authority under R.C.M. 707(c), and was thus an abuse of discretion.

The SJA's request, however, established reasonable grounds for a delay until the next event, which would have been the Article 32 investigation. The appellant's subsequent waiver of his right to an Article 32 investigation moved the case past that event, and obviated any need for further delay. Therefore, the only time properly excludable was from 8 January through 12 January 2001, when the Article 32 investigation was waived.

■ The appellant also argues that all the time between 2 February 2001, when the case was docketed, and 27 February 2001, the date of trial, should not be excluded. The appellant notes that he could have refused to consent to trial before 4 February 2001 (five days after referral), and asserts the prosecution could not have brought the appellant to trial before 12 February 2001. Therefore, he argues, the military judge erred in excluding all the time.

We find no merit to this argument. The case was docketed on 2 February 2001, and the chief circuit military judge was required to schedule a trial date. Our superior court has already rejected the argument that the appellant could have refused to go to trial for five days after referral and at the same time demanded a speedy trial. *United States v. Cherok*, 22 M.J. 438, 440 (C.M.A.1986). The appellant's argument that the prosecution could not have gone to trial before 12 February sounds like the post-hoc finger pointing the new version of R.C.M. 707 was intended to eliminate. The chief circuit military judge's decision was not whether to exclude time based upon cause, but whether to grant the delay. Both parties agreed to the 27 February trial date, and it was otherwise reasonable under the circumstances. We find the chief circuit military judge properly granted this delay. Under R.C.M. 707(c), the trial judge did not err in excluding this time for speedy trial purposes.

A chronology of events is attached to this opinion. We find that 161 days elapsed between the appellant's pretrial confinement and the date of trial, and that a total of 29 days are excludable under R.C.M. 707(c). This leaves the government accountable for 132 days, which exceeds the 120–day standard in R.C.M. 707(a).[1]

R.C.M. 707(d) provides that "failure to comply with the right to a speedy trial will result in dismissal of the affected charges." We must determine what charges were affected by the running of this speedy trial clock.

As we noted above, the appellant was ordered into pretrial confinement for divers uses of marijuana and the unlawful entries and assaults reported by SrA JM and SrA TW. These allegations formed the basis of Charge II and its Specification, Specifications 1 and 2 of Charge III, and Specifications 1 and 2 of Charge IV. For these offenses, the speedy trial clock began on the date of confinement, 19 September 2000. R.C.M. 707(a)(2).

■ A different result follows for the remaining offenses, however, which were discovered after the pretrial confinement hearing. "[A]s regards speedy disposition of a charge, where there are multiple specifications, the proceedings as to each must be considered separately." *United States v. Talavera*, 8 M.J. 14, 17 (C.M.A.1979); *United States v. Mladjen*, 41 C.M.R. 159, 161, 1969 WL 6317 (C.M.A.1969). We must determine when the speedy trial clock starts with regard to the offenses discovered after the imposition of pretrial confinement.

In *United States v. Johnson*, 48 C.M.R. 599, 1974 WL 13870 (C.M.A.1974), the (then) Court of Military Appeals considered a case where the accused was in pretrial confinement on certain charges, and additional charges were preferred during the period of pretrial confinement. The Court held that for the later-discovered offenses, "the delay should commence when the Government had in its possession substantial information on which to base the preference of charges." *Id.* at 601. At that time, the *Manual for Courts–Martial* had no rule setting specific time limits for speedy trial purposes, so the Court employed the rule created in *United States v. Burton*, 44 C.M.R. 166, 172, 1971 WL 12477 (C.M.A.1971) that the presumption of an Article 10 violation arises when pretrial confinement exceeds three months. This three-month period was later modified to 90

---

1. We recognize that the appellant requested and received a five-day delay in convening the pretrial confinement hearing, and agreed to some delay in scheduling the Article 32 investigation for 12 January 2001. However, the government did not obtain the approval of the convening authority for these delays. R.C.M. 707 does not preclude a convening authority from granting a delay after the fact. *United States v. Thompson*, 46 M.J. 472, 475 (1997). However, under R.C.M. 707 and our case law, we are not authorized to grant delays retrospectively.

days in *United States v. Driver,* 49 C.M.R. 376, 379, 1974 WL 14085 (C.M.A.1974).

Subsequently the President, exercising the authority delegated by Congress under Article 36, UCMJ, 10 U.S.C. § 836, promulgated R.C.M. 707, with extensive procedural rules relating to the right to a speedy trial. Thereafter, in *United States v. Kossman,* 38 M.J. 258, 261 (C.M.A.1993), the Court reconsidered its "rough-and-ready rule of thumb (the *Burton* rule)." The Court noted that the Burton–*Driver* rule was court-made in a procedural vacuum, without the benefit of presidential input. Acknowledging that the "landscape of speedy trial has changed dramatically" and that "the President has acted responsibly in an area in which he has clear authority," the Court overruled the 90–day Burton–*Driver* rule. *Id.* Of course, "Article 10 reigns preeminent over anything propounded by the President." *Id.*

We must next determine whether the *Kossman* court also tacitly overruled *Johnson,* which was based upon *Burton.* In *United States v. Robinson,* 28 M.J. 481, 482–83 (C.M.A.1989), the Court of Military Appeals squarely addressed the question of whether courts should apply R.C.M. 707 or the Courts' earlier precedents, and held that courts should apply R.C.M. 707.

We note that R.C.M. 707(b)(2) provides for separate speedy trial clocks for charges preferred at different times, and that all these charges were preferred at the same time. However, in *Robinson,* 28 M.J. at 482–83, our superior court held that separate speedy trial calculations may be permitted even though several offenses were preferred at the same time.

We conclude that for the remaining offenses, the speedy trial clock did not begin until the preferral of charges, in accordance with R.C.M. 707(a)(1). In this case, the appellant was brought to trial within 25 accountable days for those later-discovered charges—well within the 120–day limit.

Under R.C.M. 707(d), dismissal of affected charges may be with or without prejudice to the government's right to reinstitute charges for the same offense at a later time. If the violation is sufficiently serious as to constitute a deprivation of the constitutional right to a speedy trial, the charges must be dismissed with prejudice. In this regard,

> [T]he court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case that lead to dismissal; the impact of a reprosecution on the administration of justice; and any prejudice to the accused resulting from the denial of a speedy trial.

R.C.M. 707(d); *United States v. Bray,* 52 M.J. 659, 663 (A.F.Ct.Crim.App.2000). We must review the affected charges under this criteria.

We do not wish to minimize the seriousness of repeated offenses against female airmen, but the offenses included in the affected charges—use of marijuana, offensive touching, and unlawful entry—are not especially serious under the unique circumstances of this case. This tends to militate against retrial.

The facts and circumstances leading to the dismissal are difficult for the government to justify. Article 33, UCMJ, 10 U.S.C. § 833, indicates that when a person is in pretrial confinement, charges should be preferred, investigated, and forwarded within 8 days, if practicable. In this case, charges were not even preferred until 107 days had passed, and 17 days after the appellant formally demanded a speedy trial. Forty days were lost due to an administrative error in failing to send a copy of the investigative report to the legal office, while the appellant sat in pretrial confinement. These facts also favor dismissal with prejudice.

The impact on the administration of justice is difficult to measure. In any case where an accused freely admits guilt, but the conviction is set aside for procedural noncompliance, justice is frustrated. But justice is also frustrated when an accused is held in pretrial confinement for an unreasonably long time. We also note the appellant remains subject to prosecution for other offenses not affected by the speedy trial violation. This weighs against retrial of the affected charges.

The appellant fails to allege any specific prejudice, other than the fact of improperly

long pretrial confinement, which is a prerequisite to any consideration of this issue. There is no suggestion the government intentionally delayed the case to gain an unfair tactical advantage. We note that the appellant was credited with the time spent in pretrial confinement against his sentence. This factor favors dismissal without prejudice.

We must balance all these factors, and consider all the circumstances in this case. We conclude the nature of the offenses, the reasons for the dismissal, and the impact on the administration of justice require that the affected charges be dismissed with prejudice.

### B. Article 10, UCMJ.

■ Article 10, UCMJ, provides that when a service member is confined prior to trial, "immediate steps shall be taken … to try him or to dismiss the charges and release him." Our superior court holds that Article 10 provides broader rights than R.C.M. 707. *Kossman,* 38 M.J. at 261. The test for compliance with the requirements of Article 10 is whether the government has acted with "reasonable diligence." *Birge,* 52 M.J. at 211; *Kossman,* 38 M.J. at 262.

Reviewing the remaining specifications not affected by R.C.M. 707(a)(2), we find no violation of Article 10, UCMJ. Investigative delay prior to formal charges does not implicate the appellant's right to speedy trial, and would only raise a due process claim in unusual circumstances not present in this case. *See United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). After preferral of these charges, the prosecution proceeded to trial with reasonable diligence.

### C. Sixth Amendment.

The test for determining whether there was a violation of an accused's right to a speedy trial under the Sixth Amendment was set out in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. Becker,* 53 M.J. 229, 234 (2000). Courts should consider four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant demanded a speedy trial; and (4) any prejudice to the appellant resulting from the denial of a speedy trial. *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. 2182. We have considered all the circumstances surrounding the preferral of the remaining charges in light of this test, and find no violation of the appellant's right to speedy trial under the Sixth Amendment.

As noted above, the appellant entered a conditional plea, preserving the right to litigate the speedy trial issue on appeal. Under R.C.M. 910(a)(2), "If the accused prevails on further review or appeal, the accused shall be allowed to withdraw the plea of guilty." Because of this all-or-nothing effect, staff judge advocates are cautioned not to enter into conditional pleas unless the matter is case dispositive. Air Force Instruction 51–201, *Administration of Military Justice,* ¶ 8.2 (2 November 1999); *United States v. Phillips,* 32 M.J. 955, 957 (A.F.C.M.R.1991). In this case, the appellant's speedy trial issue was not case-dispositive, because it did not require dismissal of those charges for which the appellant was not placed into pretrial confinement. However, because the conditional plea was authorized for all the offenses, we must allow the appellant to withdraw his pleas. We will take formal action in the decretal paragraph.

### *Providence of the Plea to Indecent Acts*

The appellant pled guilty to committing an indecent act with Airman First Class (A1C) C. The appellant, his attorneys, and the prosecutors entered into a stipulation of fact that reads, in pertinent part, as follows:

> 6. Sometime between on or about 15 April 1999 and on or about 31 May 1999, the accused went to the dorm room of [A1C C]. … The accused entered the room and sat down on [A1C C's] bed. While [A1C C] was putting her make-up on and facing away from the accused, the accused removed his penis from his pants and began rubbing it. When [A1C C] turned around the accused's penis was exposed to her. The accused's penis was erect and he was rubbing it with his hand. The accused then asked [A1C C] to come over to the bed where he was sitting and rub his penis. [A1C C] told the accused to

leave and the accused got up from the bed, with his penis still exposed, and began walking towards [A1C C]. [A1C C] again told the accused to leave and threatened to scream. The accused then pulled his pants back up and left the room.

During the plea inquiry, the military judge raised the issue of whether the appellant's offense was committing an indecent act or indecent exposure. Both the appellant and his counsel agreed that the offense of which he was guilty was committing an indecent act. Before this Court, the appellant argues that the conviction is factually and legally insufficient, and that we should instead substitute a finding of guilty of indecent exposure.

■ Once the military judge has accepted a plea as provident and has entered findings based upon it, an appellate court will not reverse that finding unless the appellant establishes a substantial conflict between the plea and the accused's statements or other evidence of record. *United States v. Grimm,* 51 M.J. 254, 257 (1999). The "mere possibility" of such conflict is not a sufficient basis to overturn the trial results. *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991) (citing *United States v. Logan,* 47 C.M.R. 1, 3, 1973 WL 14641 (C.M.A.1973)). We review the military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Eberle,* 44 M.J. 374, 375 (1996).

The elements of the offense of indecent acts with another are as follows:

(1) That the accused committed a certain wrongful act with a certain person;

(2) That the act was indecent; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM,* Part IV, ¶ 90b (2000 ed.).

The appellant claims he cannot be convicted of committing an indecent act because A1C C "was simply an involuntary observer" and the offense did not require her participation. We disagree.

■ "The offense of committing indecent acts with another requires that the acts be done in conjunction or participating with another person." *United States v. Eberle,* 44 M.J. 374, 375 (1996) (quoting *United States v. Thomas,* 25 M.J. 75, 76 (C.M.A.1987)). However, there is no requirement that an indecent act involve a physical touching. *See United States v. McDaniel,* 39 M.J. 173, 175 (C.M.A.1994); *United States v. Eberle,* 41 M.J. 862, 865 (A.F.Ct.Crim.App.1995); *United States v. Daye,* 37 M.J. 714, 717 (A.F.C.M.R.1993). It is the affirmative interaction of an accused with another person, voluntarily or involuntarily, that makes what would otherwise be an indecent exposure an indecent act. *See McDaniel,* 39 M.J. at 175.

■ In this case, the accused did not simply expose his penis in a public place. He singled out A1C C and specifically targeted her as an involuntary participant in his deviant act. He went to A1C C's room, took off his pants, exposed his penis, and masturbated. His actions were directed at A1C C exclusively. He specifically invited her to join in his indecent act by asking her to rub his penis. When she told him to leave, he advanced toward her, and was deterred only by her order to leave and her threat to scream.

We are convinced that the appellant's actions amount to an indecent act with another. We hold that his plea to committing an indecent act with A1C C was provident.

*Conclusion*

The findings and sentence are set aside. The Specification of Charge II and Charge II, Specifications 1 and 2 of Charge III, and Specifications 1 and 2 of Charge IV, are dismissed with prejudice. Charge I and its Specification, Specification 3 of Charge III and Charge III, and Specification 3 of Charge IV and Charge IV, are remanded to The Judge Advocate General. A rehearing may be ordered.

## APPENDIX

| Date | Event | Julian Date | Elapsed Days | Acct Days |
|------|-------|-------------|--------------|-----------|
| 24 Aug 00 | Security Forces (SF) complete investigation of marijuana use | 237 | 0 | 0 |
| 15 Sep 00 | SF open investigation for unlawful entry/assault | 259 | 0 | 0 |
| 19 Sep 00 | Appellant placed in pretrial confinement | 263 | 0 | 0 |
| 20 Sep 00 | Original defense counsel (DC) submits notice of representation | 264 | 1 | 1 |
| 21 Sep 00 | DC requests delay in confinement hearing until 26 Sep. PCRO grants request | 265 | 2 | 2 |
| 26 Sep 00 | End of defense delay | 270 | 7 | 7 |
| 27 Sep 00 | Pretrial confinement hearing held | 271 | 8 | 8 |
| 12 Oct 00 | SF completes Report of Investigation | 286 | 23 | 23 |
| 19 Oct 00 | 81 TRW/JA provides discovery response | 293 | 30 | 30 |
| 15 Nov 00 | SF discovers additional possible victim | 320 | 57 | 57 |
| 20 Nov 00 | DC answers 81 TRW/JA discovery request | 325 | 62 | 62 |
| 17 Dec 00 | DC requests speedy trial | 352 | 89 | 89 |
| 04 Jan 01 | Charges preferred | 4 | 107 | 107 |
| 8 Jan 01 | 81 TRW/JA requests CC exclude time for speedy trial accountability under R.C.M. 707. 81 TRW/CC excludes period from 8 Jan to 1 Mar 2001 from speedy trial accountability | 8 | 111 | 111 |
| 9 Jan 01 | 81 TRW/CC appoints Art 32 investigation officer IO determines several Government witnesses are not reasonably available | 9 | 112 | 111 |
| 12 Jan 01 | DC objects to exclusion from speedy trial time DC waives Art 32 investigation set for 12 Jan 01 | 12 | 115 | 111 |
| 16 Jan 01 | 81 TRW/CC confirms 8 Jan 01 exclusion of time | 16 | 119 | 115 |
| 17 Jan 01 | 81 TRW/CC forwards charge sheet to 2 AF/CC | 17 | 120 | 116 |
| 26 Jan 01 | 2 AF/CC refers charges to GCM | 26 | 129 | 125 |
| 29 Jan 01 | Charges served on accused | 29 | 132 | 128 |
| 30 Jan 01 | Prosecutor requests 12 Feb 01 trial date DC requests 27 Feb 01 trial date | 30 | 133 | 129 |
| 2 Feb 01 | MJ sets trial date of 27 Feb 01 | 33 | 136 | 132 |
| 5 Feb 01 | MJ excludes 2–27 Feb 01 from speedy trial | 36 | 139 | 132 |

| | | | | |
|---|---|---|---|---|
| 8 Feb 01 | DC proposes pretrial agreement (PTA) | 39 | 142 | 132 |
| 9 Feb 01 | GCM/CA approves PTA | 40 | 143 | 132 |
| 27 Feb 01 | Accused is arraigned | 58 | 161 | 132 |