# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**R.Q. WARD, J.A. FISCHER, D.C. KING**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**CARLTON WILDER, JR.**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201400118**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 12 November 2013.
**Military Judge**: LtCol C.M. Greer, USMC.
**Convening Authority**: Commanding General, 2d Marine Division, Camp Lejeune, NC.
**Staff Judge Advocate's Recommendation**: Maj J.N. Nelson, USMC.
**For Appellant**: CAPT Bree Ermentrout, JAGC, USN.
**For Appellee**: LT James Belforti, JAGC, USN; LT Ann Dingle, JAGC, USN.

**12 August 2014**

---------------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, convicted the appellant, in accordance with his pleas, of one specification of attempted sexual assault of two children, one specification of distributing and one specification of possessing child pornography, and one specification of

distributing harmful pictures to a minor, in violation of Articles 80 and 134, Uniform Code of Military Justice.[1] The military judge sentenced the appellant to confinement for 13 years and four months, forfeiture of all pay and allowances, reduction to pay grade E-1, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged, but suspended execution of confinement in excess of 84 months, pursuant to the pretrial agreement (PTA).

On appeal, the appellant asserts that a PTA condition requiring him to withdraw his motion to dismiss for a violation of his right to a speedy trial was impermissible. He urges us to void this condition and grant him relief for the violation. The Government concedes that the condition was impermissible, but claims that the appellant failed to preserve the issue since he did not litigate the issue at trial and then pleaded guilty unconditionally. In the alternative, the Government argues that the appellant has failed to make a colorable claim that relief is warranted.

Having examined the record of trial, the assignments of error, and the pleadings of the parties, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Background

On 08 November 2012, the appellant posted an online advertisement searching for a "dirty taboo couple." Prosecution Exhibit 1. An undercover agent (UCA) of the Naval Criminal Investigative Service contacted the appellant posing as the wife of a Marine with two daughters, aged four and seven years old. The appellant and UCA communicated via email wherein the appellant offered to pay for the children's underwear and pictures of child pornography, and for the opportunity to engage in sexual activity with the children.

On 13 November 2012, the appellant met and provided another UCA, purportedly the father of the children, with $45.00 in exchange for what he believed were items of children's underclothing and a disc purporting to contain child pornography. The UCA then drove the appellant to a house where the appellant believed he was going to engage in sexual activity with the children. Police were waiting at the home and arrested

---

[1] 10 U.S.C. §§ 880 and 934.

the appellant upon his arrival.  The appellant admitted to the arresting officer that he intended to engage in sexual intercourse with the children and that he had received, possessed, and distributed child pornography.  The appellant also admitted having sent R.R., a 15-year-old girl he met while speaking to her High School Junior ROTC class, a picture of his penis from his cell phone.

On 14 November 2012, the appellant was ordered into pretrial confinement solely for the offenses that had occurred the day before, namely, attempted rape and sexual assault of two children and child pornography.[2]  These charges were preferred on 04 December 2012 and the appellant, represented by civilian defense counsel, was arraigned on 23 April 2013.  An agreed upon trial date was established for 27 Aug 2013.[3]

On 16 April 2013, the Government preferred a second set of charges, alleging that the appellant indecently exposed his penis to R.R. and a separate specification of possessing child pornography.  These charges were later entitled Additional Charges I and II.  On 17 July 2013, the Government preferred yet another charge alleging that the appellant wrongfully distributed a picture of his penis to R.R., later entitled Additional Charge III.  On 05 August 2013, the appellant was arraigned at a separate general court-martial on Additional Charges I-III where he objected to joinder of all charges at a single court-martial.  The appellant was not represented by his civilian defense counsel on these additional charges.  At arraignment, the parties agreed to a "Pretrial Information Report" (PTIR) that established a full trial schedule, including a deadline of 11 September 2013 for motions and a trial date of 19 November 2103.

Notwithstanding the motions deadline, on 18 September 2013 the appellant filed a motion to dismiss Additional Charges I-III based upon violations of his right to a speedy trial under RULE FOR COURT MARTIAL  707, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Article 10, UCMJ, and the Sixth Amendment.  The Government responded on 03 October 2013.  Citing progress on pretrial negotiations, the defense requested two one-week continuances to the Article 39(a), UCMJ, motion hearing.  However, on 18 October

---

[2] The appellant remained in pretrial confinement until he was sentenced on 12 November 2013.

[3] The appellant did not contend (either at trial or on appeal) that his speedy trial right was violated as to the original charges.

3

2013, prior to litigating the motion, the appellant entered into a PTA with the CA, which contained the following provision:

> I agree to withdraw the currently pending "Defense Motion to Dismiss." I understand that if this agreement becomes null and void, I will be able to re-file any such withdrawn motion.

Appellate Exhibit XV, ¶ 14(g).

On 12 November 2013, the appellant agreed to joinder of all charges, withdrew his motion to dismiss, and entered pleas of guilty consistent with the terms of the PTA.

## Discussion

Whether a condition of a PTA is impermissible is a question of law reviewed *de novo*. *See United States v. Tate,* 64 M.J. 269, 271 (C.A.A.F. 2007). "A term or condition in a [PTA] shall not be enforced if it deprives the accused of . . . the right to a speedy trial . . . ." R.C.M. 705(c)(1)(B). This unequivocal rule is buttressed by decades of controlling case law holding that PTAs may not be conditioned on the accused's waiver of his statutory and constitutional right to speedy trial. *See United States v. Cummings*, 38 C.M.R. 174, 176 (C.M.A. 1968); *see also United States v. Mizgala*, 61 M.J. 122 (C.A.A.F. 2005) and cases cited therein. This is so because speedy trial rights are "fundamental rights" that must not be subject to bargaining. *Mizgala*, 61 M.J. at 124 (citing *United States v. Parish*, 38 C.M.R. 209, 214 (C.M.A. 1968)); *see* R.C.M. 705(c)(1)(B), Analysis at A21-40.

Whether the parties style the PTA condition as "withdrawal" or "waiver" matters not since the former, followed by an unconditional guilty plea, operates as the latter. Additionally, the record is clear that the parties understood the withdrawal to act as waiver.[4] Accordingly, we find this condition is impermissible. *Tate*, 64 M.J. at 271.

---

[4] In an exhibit entitled, "Sentencing Memo (Continuation of Lance Corporal Wilder's unsworn statement through counsel)," the civilian defense counsel argued: "**The conviction will stick**. There were motions pending and waived by this plea that could have resulted in charges being dismissed, perhaps with prejudice. Even if the motions were denied, there would be appellate issues that would have kept this case active for years, perhaps resulting in a retrial. Pleading guilty removed the real possibility charges would be dismissed and removed realistic appellate issues." Defense Exhibit B at 1.

4

Despite the illegal PTA provision requiring the appellant to withdraw his speedy trial motion, the Government urges us to apply waiver by virtue of the appellant's unconditional guilty plea and failure to litigate his Article 10 motion.  Government Answer of 7 Jul 2014 at 12-14.  We decline to do so.  In the event we do not find waiver, the appellant must set forth a "prima facie showing or a colorable claim that he is entitled to relief."  *United States v. McLaughlin*, 50 M.J. 217, 219 (C.A.A.F. 1999) (citations omitted).  We find he has done so.  Accordingly, we will strike the impermissible provision and provide the appellant that to which he was entitled at trial: review of whether the Government violated his right to a speedy trial.[5]

## R.C.M. 707

Initially, we must determine when the speedy trial clock began on the additional charges.  R.C.M. 707(b)(2) explains that "[w]hen charges are preferred at different times, accountability for each charge shall be determined from the appropriate date under subsection (a) of this rule for that charge."  R.C.M. 707(a) states, in relevant part, that the speedy trial clock commences upon the preferral of charges or the imposition of restraint.  Since the appellant was not ordered into pretrial confinement on the additional charges, a plain reading of this rule indicates the speedy trial clock on each set of these charges commenced on the dates of preferral.

However, citing *United States v. Bray,* 52 M.J. 659 (A.F.Ct.Crim.App. 2000) for the proposition that the speedy trial clock began to run "when the Government had in its possession substantial information on which to base the preference of that charge,"[6] the appellant argues that the R.C.M. 707 speedy trial clock commenced on 14 November 2013, the date pretrial confinement began.  Appellant's Brief at 5.

---

[5] The appellant's brief and motion (AE VII) aver sufficient facts to constitute a "*prima facie*" claim of speedy trial violation.  Despite the lack of findings at the trial level, the record contains the appellant's motion to dismiss and the Government's reply, as well as attached exhibits with a detailed chronology of pertinent events.  Neither side desired to call witnesses on the motion and the timeline associated with the speedy trial motion is uncontested.  Therefore, applying our fact-finding ability under Article 66, UCMJ, we are confident the record contains adequate information to obviate the necessity for remand.

[6] *Bray*, 52 M.J. at 662 (citing *United States v. Talavera*, 8 M.J. 14 (C.M.A. 1979)).

5

This "substantial information" rule originated in *United States v. Johnson*, 48 C.M.R. 599 (C.M.A. 1974). In that case, the Court of Military Appeals held that, for offenses discovered after the accused was placed into pretrial confinement, "the delay should commence when the Government had in its possession substantial information on which to base the preference of charges." *Id.* at 601. However, we find the appellant's reliance on this test misplaced. *Johnson* created a judicial rule as part of the Court of Military Appeals jurisprudence that established the presumption of an Article 10 violation when pretrial confinement exceeded three months. *United States v. Burton*, 44 C.M.R. 166 (C.M.A. 1971). Since then, the President has promulgated R.C.M. 707, which contains extensive procedural rules relating to the right to a speedy trial and *Burton* was thus overruled in favor of R.C.M. 707. *United States v. Kossman*, 38 M.J. 258, 261 (C.M.A. 1993).

We find that the Court of Military Appeals's holding in *Kossman* voids the *Johnson* rule as well.[7] *See United States v. Robinson*, 28 M.J. 481, 482-83 (C.M.A. 1989) (not error to decline to apply *Burton*-based precedent in light of R.C.M. 707). We hold that R.C.M. 707(a)(1) establishes the commencement of the speedy trial clock for the additional charges as the dates of preferral. Since the accused was arraigned on Additional Charges I and II 111 days after preferral, and on additional charge III 19 days after preferral, we conclude that the appellant's rights under R.C.M. 707 were not violated.

## Article 10

We turn next to whether the Government violated Article 10, UCMJ, which provides: "When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." Here, the appellant declares that "Article 10 is triggered in this case because the accused was confined." Appellant's Brief at 8. This is an incomplete statement of the law. Pretrial confinement triggers Article 10 only to those charges upon which pretrial confinement was ordered. *See United States v. Proctor*, 58 M.J. 792, 797 (A.F.Ct.Crim.App. 2003) (when already serving pretrial confinement, speedy trial clock

---

[7] We also find more persuasive than *Bray* the more recent Air Force case of *United States v. Proctor*, 58 M.J. 792, 797 (A.F.Ct.Crim.App 2003), decided after *Bray*, which held that the speedy trial clock for additional charges not the basis of pretrial confinement began on the date of preferral, in accordance with R.C.M. 707(a)(1).

6

does not begin to run on new charges until date of preferral); *see also United States v. Nelson*, 28 M.J. 922, 928 (N.M.C.M.R. 1988) (If a person suspected of one offense is placed in pretrial confinement pending investigation of that offense, speedy trial clock starts with respect to that offense when he is confined; no Article 10 clock was triggered for subsequent offenses for which he was not confined).

We glean from the record that the appellant was placed in pretrial confinement for attempted rape of the notional children and receiving, possessing, and distributing child pornography from a period of time between 07 August 2012 and 28 October 2012.[8]  Therefore, we hold that, under these circumstances, Article 10 was inapplicable to the additional charges to which the appellant pleaded guilty.

## Sixth Amendment

Finally, we turn to whether the Government violated the appellant's Sixth Amendment right to a speedy trial.  The Sixth Amendment provides, inter alia, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST. amend. VI.  In the military context, the Sixth Amendment speedy trial right applies upon preferral or imposition of pretrial restraint.  *United States v. Vogan*, 35 M.J. 32, 33 (C.M.A. 1992) (citing *United States v. Marion*, 404 U.S. 307, 320 (1971)) (additional citation omitted).  For Sixth Amendment purposes, the speedy trial clock continues to run until the trial actually commences.  *United States v. Cooper,* 58 M.J. 54, 60 (C.A.A.F. 2003).

As discussed, the appellant was not subjected to pretrial restraint on the additional charges, thus his Sixth Amendment speedy trial right also began on the date of preferral.  *See Vogan*, 35 M.J. 33 (Sixth Amendment protection of the right to speedy trial does not apply when accused is already confined for other reasons).  Therefore, the relevant time period for Sixth Amendment analysis is between preferral and 13 November 2013, the trial date.  In examining whether the appellant's Sixth Amendment speedy trial right has been violated, we apply the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right; and (4) prejudice to the appellant.  *United States v. Tippit*, 65 M.J. 69, 73 (C.A.A.F. 2007).  "Unless the delay is facially

---

[8] AE IX at 25, 30.

unreasonable, the full due process analysis will not be triggered." *United States v. Merritt*, 72 M.J. 483, 489 (C.A.A.F. 2013) (citation and internal quotation marks omitted). If the due process analysis is triggered by a facially unreasonable delay, we balance our analysis of the factors to determine whether there has been a due process violation. *Id*.

1.   **Length of Delay.**   The accused was arraigned on Additional Charges I and II 111 days after preferral and pleaded guilty 92 days after that.   Under these circumstances, we find the delay sufficient to trigger a full *Barker* analysis.

2.   **Reason for Delay.**   The additional charges required the standard processing for a general court martial.   The Article 32, UCMJ, hearing was held three days after preferral and the report returned 12 working days later.   The record indicates the defense requested an expert, initially objected to joinder of charges, and agreed to a PTIR on 05 August 2013.   The PTIR set forth deadlines for the parties that culminated in an agreed upon motions date of 11 September 2013 and a trial date of 19 November.   Notwithstanding the agreed upon motions date, trial defense counsel filed a speedy trial motion on 18 September 2013, claiming that the need for coordination with civilian defense counsel on the "parallel general court-martial" was good cause for his untimely submission.   The parties then entered into PTA negotiations, took steps to merge the charges, and coordinated schedules (to include that of a civilian defense counsel) for an Article 39(a) session where the accused would enter pleas and be sentenced.   The defense requested two continuances during this time frame, both of which stated the request was "in the best interests of the accused."

3.   **Demand for a Speedy Trial.**   Prior to the speedy trial motion, the appellant did not demand a speedy trial.   Once demanded, the defense submitted two continuance requests.   As our superior court has recognized, "[s]tratagems such as demanding speedy trial now, when the defense knows the Government cannot possibly succeed, only to seek a continuance later, when the Government is ready, may belie the genuineness of the initial request." *Kossman*, 38 M.J. at 262.   Here, the defense did not make a demand for speedy trial until over one hundred days beyond preferral and in the course of what appears to have been pretrial negotiations.

4.   **Prejudice to the Appellant.** The Supreme Court has established the following test for prejudice in the speedy trial context:

8

Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Mizgala*, 61 M.J. at 129 (quoting *Barker*, 407 U.S. at 532 (footnote omitted)).

The appellant has not established prejudice under these criteria. A bald assertion that the appellant was "confined in a facility not designed for long-term confinement" and "had to live under the threat and uncertainty of a court martial"[9] is insufficient. First, the appellant was not confined on the charges upon which the speedy trial violations are alleged. Therefore, it cannot be said he suffered any pretrial incarceration prejudice. Even if he did, the appellant would receive day-for-day confinement credit and there is no evidence that the appellant's anxiety exceeded the norm, that he wasn't paid, or that his conditions were unduly harsh. Most importantly, the appellant's defense was not impaired in any way. Accordingly we find the appellant was not prejudiced by any delay.

### Conclusion

After balancing the *Barker* factors, we conclude that the appellant suffered no violation of his right to a speedy trial, and the findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

---

[9] Appellant's Brief at 10