**UNITED STATES**

v.

**Airman Basic Jason S. EARLE, FR143–82–6674, United States Air Force.**

**ACM 32366.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 27 Aug. 1996.

Decided 29 May 1997.

---

Appellate Counsel for Appellant: Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, and Major Gerald R. Bruce.

Appellate Counsel for the United States: Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin, and Captain Steven D. Dubriske.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, C.H., II, Judge:

Convicted pursuant to his pleas of assault with a means likely to produce death or grievous bodily injury and assault consummated by a battery against his two-month-old son, appellant was sentenced by a military judge sitting alone to a bad-conduct discharge, confinement for 14 months, and total forfeitures. He brings three assignments of error: (I) that both specifications are multiplicious; (II) that his plea to aggravated assault was improvident; and (III) that his sentence was enhanced by operation of the amendments to the Uniform Code of Military Justice (UCMJ) which became effective on April 1, 1996. We agree that, as the proof unfolded in this trial, the two specifications were multiplicious, and one must be dismissed.

Appellant, who at the time was only 19 years old, was home alone for the first time with his twin baby boys, J and T, who were just over two months old. On February 18, 1996, he brought J into the emergency room at Barksdale Air Force Base, claiming that J had rolled off the couch and fallen onto the carpeted floor. The baby had multiple bruises on his head, and x-rays revealed two significant skull fractures, on opposite sides, each between 4 and 6 inches in length. This clinical evidence militated strongly against appellant's original version of events, and he eventually came up with a second story. He admitted to becoming suddenly angry while holding J when J wouldn't stop crying, and "smacking" him with an open hand, causing J to fall out of his arms and land head-first on the kitchen floor.

An eleventh hour pre-trial agreement led to an obviously hastily-prepared providence inquiry. Still, appellant stuck to the above story, and the stipulation of fact recited no alternative version of events. (Although the government did not, strictly speaking, stipulate to the facts as appellant had related them, it did stipulate that appellant had given that version of the incident.) Throughout the providence inquiry, appellant adhered to his second story, viz., that a single blow from his hand had caused the bruising and had led to the baby's fall from his arms. It was implicit in the sequence of events that the fall was responsible for the more serious skull fractures.

Dr. (Lieutenant Colonel) Kent P. Hymel, who was qualified by training and experience as an expert on juvenile head trauma and abuse, testified during the sentencing phase. Medical studies, according to Dr. Hymel, showed that in only 1–3% of the reported cases did a skull fracture in a child so young result from a simple fall from a height of 3 to 6 feet. Suffering two fractures from a single fall was virtually unheard of, with only two such cases noted in all of medical literature. At that, Dr. Hymel testified that for two fractures to occur from a single impact, one would expect them to be symmetrically opposed on the skull, stemming from an impact on the mid-line of the top of the skull. In J's case, the fractures were asymmetrical, and there was no evidence that the trauma from the "fall" had been on the mid-line of the

skull. Without ruling it out altogether as a possibility, Dr. Hymel was highly skeptical that the skull fractures resulted from a single fall, or even a single blow to the head. Neither, in his opinion, did that theory satisfactorily account for the multiple bruises on J's head.

■ Regardless of Dr. Hymel's testimony during sentencing, given the pleas, the prosecution was stuck with appellant's story—that the bruises and the two fractures had resulted from a single blow to J's head. Put that starkly, we cannot conclude other than charging that single blow two ways under the same article of the UCMJ (Article 128, 10 U.S.C. § 928) was multiplicious. *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); *United States v. Weymouth*, 43 M.J. 329, 340 (1995); *United States v. Foster*, 40 M.J. 140 (C.M.A.1994).

The government only weakly contends to the contrary, concentrating instead on the principle of waiver. After all, appellant never made any motion at trial challenging the government's charging, contenting himself, apparently, with the military judge's *sua sponte* finding that the two specifications were multiplicious for sentencing purposes. Citing *United States v. Lloyd*, 46 M.J. 19 (1997), the government contends that appellant's guilty plea waived the multiplicity issue.

■ We dispose first with the idea that the military judge's finding with respect to multiplicity for "sentencing purposes" was, if the specifications were indeed multiplicious, adequate relief. It was not. This notion has been, we hope, definitively laid to rest. *See, e.g., United States v. Oatney*, 45 M.J. 185, 189 (1996); *United States v. Dolbow*, 44 M.J. 814 (A.F.Ct.Crim.App.1996), *pet. denied*, 46 M.J. 424 (1997). If two charges (or specifications) are multiplicious because they offend the Double Jeopardy principle of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), then a conviction for both cannot be sustained, never mind that sentencing relief was afforded. *Ball v. United States*, 470 U.S. 856, 861–62, 105 S.Ct. 1668, 1671–72, 84 L.Ed.2d 740 (1985); *Dolbow; see also United States v. Roberson*, 43 M.J. 732, 734–35 (A.F.Ct.Crim.App.1995).

To meet the exigencies of proof, the government may charge multipliciously in the alternative, but if a conviction to both ensues, one or the other must be dismissed. *Id.*

■ Just because two offenses may not be multiplicious, and may fairly and constitutionally be charged and be convicted upon separately without offending the constitutional precepts of *Blockburger, Ball*, and *United States v. Teters*, 37 M.J. 370 (C.M.A.1993), does not preclude a military judge from exercising his inherent equitable authority to adjust the maximum sentence based upon the admonition in R.C.M. 307(c)(4) (Discussion) against unreasonable multiplication of charges. Put another way, if the charging is, in the judge's view, *unreasonable*, albeit *constitutional*, then there is authority to adjust the maximum sentence *without having to dismiss one or the other of the charges*. As in multiplicity, an accused may not sit passively at trial then expect an appellate court to rescue him from an unreasonable multiplication of charges. *United States v. Erby*, 46 M.J. 649 (A.F.Ct.Crim.App.1997). But we have more than merely an unreasonable multiplication of charges. These offenses are multiplicious in the constitutional sense and a conviction for both cannot be sustained.

■ But, the government insists, appellant "affirmatively" waived this argument by failing to raise it at trial. It is true that a provident plea of guilty waives the issue of multiplicity unless the two specifications at issue are "facially duplicative." *Lloyd*, 46 M.J. at 23, *citing United States v. Broce*, 488 U.S. 563, 575, 109 S.Ct. 757, 765, 102 L.Ed.2d 927 (1989). Facial duplicativeness is, in theory at least, an even less demanding standard than plain error. *See Lloyd*, 46 M.J. at 23 n. 2. We have no occasion to ask whether an affirmative waiver forecloses even a facially duplicative multiplicity analysis, because it is certain that appellant's silence during the discussion of the multiplicity question at trial will not suffice to affirmatively waive the question. In *United States v. Harwood*, 46 M.J. 26 (1997), the Court of Appeals for the Armed Forces interpreted "affirmative waiver" to mean an actual renunciation of the

right at issue, a situation we do not have here.

It would be difficult to conceive of a case where two specifications could be more "facially duplicative" than here. This was the same blow, struck against the same victim, at the same time, charged two ways (one a lesser included offense of the other), under the same punitive article of the UCMJ. Because it offended thereby the constitutional prohibition against Double Jeopardy which forms the cornerstone of multiplicity analysis, sentencing relief was insufficient. Appellant cannot be convicted twice under the facts of this case for the same offense. Consequently we dismiss Specification 2 of the Charge (assault consummated by a battery on a child.)

■ Appellant's remaining assignments of error are without merit. Despite a slippery passage through the providence inquiry, we are persuaded that the defense of accident was not raised in appellant's responses to the military judge's question. Given that appellant may not have intended specifically to strike his infant son so hard as to knock him out of his arms, the fact remains that the appellant agreed that the occurrence was a reasonable and foreseeable consequence of the force and velocity of the blow, a blow he conceded was not accidental. We find nothing in appellant's responses to the military judge's questioning to conflict with his guilty plea. *United States v. Shearer*, 44 M.J. 330, 334 (1996).

Finally, appellant's *ex post facto* arguments were resolved adversely to his position in *United States v. Pedrazoli*, 45 M.J. 567 (A.F.Ct.Crim.App.1997).

■ Specification 2 of the Charge (assault consummated by a battery on a child less than 16) is dismissed. In view of the military judge's determination that the two specifications were merged for sentencing purposes, and in view of the extremely aggravated nature of the injuries to a two-month-old baby, we find the sentence to be nonetheless appropriate and approve it without modification. The findings of guilt to Specification 1 of the Charge and to the Charge are correct in law and fact and, along with the sentence, are

AFFIRMED.

Senior Judge PEARSON and Judge J.H. MORGAN concur.