# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39796 (reh)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Maxwell A. MATTHEW**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 31 October 2024

————————————

*Military Judge*: Matthew N. McCall (arraignment); Pilar G. Wennrich.

*Approved sentence*: Bad-conduct discharge, confinement for 12 months, forfeiture of all pay and allowances for 12 months, and reduction to E-1. Sentence adjudged on 30 May 2023 at Patrick Space Force Base, Florida.

*For Appellant*: Robert Feldmeier, Esquire.

*For Appellee*: Colonel Matthew D. Talcott, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, RICHARDSON, and KEARLEY, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge KEARLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

Appellant's case is before this court for a third time. At Appellant's original court-martial, he was charged with one specification of wrongful possession of

child pornography on divers occasions (Specification 1) and one specification of wrongful distribution of child pornography on divers occasions (Specification 2), both offenses occurring between 30 August 2015 and 19 October 2017, and both in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] A general court-martial composed of a military judge alone found Appellant guilty, in accordance with his pleas, of wrongful possession of child pornography, as alleged in Specification 1, and attempted wrongful distribution of child pornography in violation of Article 80, UCMJ, 10 U.S.C. § 880, a lesser-included offense of the wrongful distribution offense alleged in Specification 2. After the Government informed the military judge it did not intend to offer proof of the greater offense, the military judge entered a finding of not guilty as to wrongful distribution of child pornography. The military judge sentenced Appellant to a dishonorable discharge, confinement for 17 months, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Appellant initially raised two assignments of error on appeal: (1) whether Appellant's guilty plea to attempted distribution of child pornography was provident; and (2) whether the record of trial was incomplete. During this court's initial review of the record, we determined the transcript of Appellant's arraignment was missing. Pursuant to Rule for Courts-Martial (R.C.M.) 1104(d)(1), this court remanded the record of trial for corrective action. *United States v. Matthew*, No. ACM 39796, 2020 CCA LEXIS 486, at *2 (A.F. Ct. Crim. App. 23 Dec. 2020) (order). The Government subsequently returned the record without correction, stating "[a]n authenticated transcript of Appellant's arraignment cannot be obtained because the audio recording of the hearing has been lost and no alternatives can be located." This court found the record was not verbatim as required by Article 54, UCMJ, 10 U.S.C. § 854, and R.C.M. 1103(b)(2)(B),[2] set aside the findings and sentence, and returned the record to The Judge Advocate General (TJAG) "for return to an appropriate convening authority for action consistent with R.C.M. 1103(f).[3]" *United States v. Matthew*, No. ACM 39796 (f rev), 2022 CCA LEXIS 425, at *16 (A.F. Ct. Crim. App. 21 Jul. 2022) (unpub. op.).

On remand, the convening authority referred the original Specifications 1 and 2 and the Charge to a second general court-martial. Pursuant to a pretrial

---

[1] All references to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2012 ed.). Unless otherwise noted, all other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] *Manual for Courts-Martial, United States* (2016 ed.).

[3] *Manual for Courts-Martial, United States* (2016 ed.).

agreement (PTA) between Appellant and the convening authority, the military judge accepted Appellant's conditional guilty plea to Specification 1 and the Charge. The military judge dismissed Specification 2 with prejudice pursuant to a defense motion. The military judge sentenced Appellant to a bad-conduct discharge, confinement for 12 months, forfeiture of all pay and allowances for 12 months, and reduction to the grade of E-1. The convening authority approved the rehearing sentence in its entirety.

Now again before us on appeal, Appellant raises five issues, which we have reordered and rephrased: (1) whether the Double Jeopardy Clause[4] prohibited a rehearing as to Specification 1 of the Charge; (2) whether the Charge and Specification 1 must be dismissed, with or without prejudice, due to violation of Appellant's R.C.M. 707 right to speedy trial; (3) whether Appellant's sentence violates Article 63, UCMJ, 10 U.S.C. § 863; (4) whether Appellant is entitled to relief for excessive post-trial delay; and (5) whether the Government can prove 18 U.S.C. § 922 is constitutional, meaning its application is consistent with the nation's historical tradition of firearm regulation, when Appellant was convicted of a nonviolent offense. We also address two matters the court identified in our review of the record: (6) an omission from the record of trial; and (7) an error in the court-martial promulgating order. We have carefully considered issue (5) and find it does not warrant discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). We direct correction of the court-martial order in our decretal paragraph. As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

In April 2017, a computer application company self-reported multiple files of apparent child pornography, located on its servers and associated with a particular account, to the National Center for Missing and Exploited Children (NCMEC). NCMEC was able to identify an Internet Protocol (IP) address and email address associated with the reported account. NCMEC notified the Federal Bureau of Investigation, which obtained additional information associating Appellant with the IP address, email, and suspected child pornography. The Air Force Office of Special Investigations (AFOSI) initiated an investigation in October 2017. In November 2017, the AFOSI interviewed Appellant, who admitted to possessing and watching child pornography, including receiving and storing such material on the Internet and viewing such material on his cell phone. With Appellant's consent, the AFOSI searched his phone and found several files containing child pornography. The AFOSI also searched

---

[4] U.S. CONST. amend. VI.

Appellant's residence pursuant to a search warrant and found additional child pornography on electronic devices located there.

## II. DISCUSSION

### A. Double Jeopardy

#### 1. Additional Background

After Appellant was arraigned for the rehearing, the Defense filed a pretrial motion to dismiss the Charge and both specifications on double jeopardy grounds. The Defense argued Appellant's re-prosecution for Specification 2 (wrongful distribution of child pornography) was barred because the military judge at the original court-martial had entered a finding of not guilty as to that specification. The Defense further argued Specification 1 (wrongful possession of child pornography) must be dismissed because Specification 1 was a lesser-included offense of, and multiplicious with, Specification 2, of which Appellant had been acquitted. In response, the Government argued neither specification was required to be dismissed because the convening authority's decision to order a full rehearing "expunged" the result of the first court-martial.

While the defense motion to dismiss was pending, Appellant and the convening authority entered a PTA which provided Appellant would plead guilty to Specification 1 and to the Charge, but not guilty to Specification 2. The PTA further provided that "upon the announcement of the findings of the court," the convening authority would "direct Trial Counsel to dismiss Specification 2 of the Charge, necessarily including its lesser included offense of attempted distribution of child pornography." The PTA further provided Appellant's guilty pleas were "conditioned on [Appellant's] ability to preserve for review the military judge's decisions concerning [Appellant's] motion to dismiss the Charge for violation of R.C.M. 707 and [his] motion to dismiss the Charge for double jeopardy."

When the court-martial reconvened on 30 May 2023, prior to entry of pleas, the military judge entered an oral ruling on the Defense's motion to dismiss for former jeopardy, which she subsequently supplemented in writing. The military judge granted the motion in part and denied it in part. She dismissed Specification 2 with prejudice, explaining "an announced decision to acquit is final" and "cannot be impeached, . . . withdrawn or disapproved." However, the military judge denied the motion with respect to Specification 1. She explained "[t]he Government is permitted to charge in the alternative as required by exigencies of proof," and that "[t]he judgment assessed at the original court-martial with respect to its finding as to [S]pecification 1 was not final, and the finding of the original [c]ourt as to [S]pecification 1 appropriately underwent appellate review and was appropriately referred for rehearing."

After the military judge announced her ruling, and following a short recess, trial counsel announced the convening authority intended "to proceed according with" the PTA, notwithstanding the ruling on the motion to dismiss. Appellant entered a plea of guilty to "the Charge and Specifications [sic]." After a thorough providency inquiry, the military judge found Appellant guilty of "Specification 1" and of the Charge. No findings were entered with respect to Specification 2.

**2. Law**

Double jeopardy is a question of law we review de novo. *See United States v. Driskill*, 84 M.J. 248, 252 (C.A.A.F. 2024) (citing *United States v. Hutchins*, 78 M.J. 437, 444 (C.A.A.F. 2019)).

> Three prohibitions against "double jeopardy" apply to courts-martial. *United States v. Rice*, 80 M.J. 36, 40 n.8 (C.A.A.F. 2020). The Double Jeopardy Clause of the Fifth Amendment provides: "No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Similarly, Article 44(a), UCMJ, provides: "No person may, without his consent, be tried a second time for the same offense." And Rule for Courts-Martial (R.C.M.) 907(b)(2)(C) requires dismissal of a charge or specification if "[t]he accused has previously been tried by court-martial or federal civilian court for the same offense."

*Id.* (ellipsis and alteration in original).

The United States Court of Appeals for the Armed Forces (CAAF) has explained "[a]pplying these three prohibitions requires multiple steps." *Id.* One question to be answered is whether the accused has been "tried twice." *Id.* This question involves determining whether jeopardy as to a particular offense has both "attached" and "terminated." "[O]nce jeopardy has attached, an accused may not be retried for the same offense without consent once jeopardy has terminated." *United States v. Easton*, 71 M.J. 168, 172 (C.A.A.F. 2012) (footnote omitted) (citing *Richardson v. United States*, 468 U.S. 317, 325 (1984)); *see also United States v. McMurrin*, 72 M.J. 697, 704 (N.M. Ct. Crim. App. 2013) ("A successful double jeopardy claim, therefore, must have two temporal components: first, that jeopardy attaches, and second, that it terminates." (citation omitted)).

In general, "jeopardy attaches pursuant to Article 44(a), UCMJ, 'when evidence is introduced.'" *Driskill*, 84 M.J. at 252 (quoting *Easton*, 71 M.J. at 172). As for termination, with regard to a finding of *guilty*, in general "[n]o proceeding in which an accused has been found guilty by a court-martial upon any charge or specification is a trial in the sense of [Article 44, UCMJ,] until the finding of guilty has become final after review of the case has been fully

completed." 10 U.S.C. § 844(b). "The successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict . . . poses no bar to further prosecution on the same charge." *United States v. Scott*, 437 U.S. 82, 90–91 (1978) (citing *Burks v. United States*, 437 U.S. 1, 1 (1978)). In contrast, a finding of *not guilty*—whether erroneous or not—is final, may not be appealed, and terminates jeopardy. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977); *United States v. Hardy*, 46 M.J. 67, 73 (C.A.A.F. 1997); *United States v. Marcee*, ARMY MISC 20210550, 2022 CCA LEXIS 68, at *3–4 (A. Ct. Crim. App. 28 Jan. 2022) (unpub. op.).

In addition to attachment and termination, double jeopardy analysis requires determination "whether the accused is truly being tried twice 'for the same offense.'" *Driskill*, 84 M.J. at 252. Military courts generally apply the test announced in *Blockburger v. United States*, 284 U.S. 303, 303–04 (1932), to determine whether two offenses are the same for double jeopardy purposes, whereby the elements of each offense are compared to determine whether each offense requires proof of at least one element the other offense does not. *Driskill*, 84 M.J. at 252–53.[5] The prohibitions on double jeopardy "also 'forbid[ ] successive prosecution and cumulative punishment for a greater and lesser included offense.'" *Rice*, 80 M.J. at 40 (quoting *Brown v. Ohio*, 432 U.S. 161, 169 (1977)).

Related to the prohibition on double jeopardy is the concept of multiplicity. Multiplicity in violation of the Double Jeopardy Clause occurs when "a court, contrary to the intent of Congress, imposes multiple convictions and punishments under different statutes for the same act or course of conduct." *United States v. Anderson*, 68 M.J. 378, 385 (C.A.A.F. 2010) (emphasis and internal quotation marks omitted) (quoting *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006)). The Government may properly charge multiplicious specifications in the alternative in order to "meet the exigencies of proof, . . . but if a

---

[5] The CAAF has held "that only some 'differences are valid ones when determining what constitutes the same offense for purposes of a double jeopardy analysis involving Article 134, UCMJ.'" *Driskill*, 84 M.J. at 253 (quoting *Rice*, 80 M.J. at 43). The CAAF further noted that in *Rice* they

> held that the Double Jeopardy Clause precluded the [G]overnment from exploiting the unique nature of Article 134, UCMJ, to try a servicemember by court-martial for conduct that the [G]overnment had previously charged as violations of Title 18 offenses in federal civilian court "simply by removing a jurisdictional element" and refiling the charges under clause 1 or 2 of Article 134, UCMJ.

*Id.* at 256 (quoting *Rice*, 80 M.J. at 40–44).

conviction to both [specifications] ensues, one or the other must be dismissed." *United States v. Earle*, 46 M.J. 823, 825 (A.F. Ct. Crim. App. 1997) (citation omitted).

As charged in Appellant's case, the elements of the offense of distribution of child pornography (Specification 2) include that within the continental United States, on divers occasions between 30 August 2015 and 19 October 2017, Appellant: (1) "knowingly and wrongfully distributed child pornography to another," and (2) "under the circumstances, the conduct of [Appellant] was . . . of a nature to bring discredit upon the armed forces." *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), pt. IV, ¶ 68b.b.(3). "'Distributing' means delivering to the actual or constructive possession of another." 2012 *MCM*, pt. IV, ¶ 68b.c.(3).

As charged in Appellant's case, the elements of the offense of possession of child pornography (Specification 1) include that within the continental United States, on divers occasions between 30 August 2015 and 19 October 2017, Appellant: (1) "knowingly and wrongfully possessed . . . child pornography," and (2) "under the circumstances, the conduct of [Appellant] was . . . of a nature to bring discredit upon the armed forces." 2012 *MCM*, pt. IV, ¶ 68b.b.(1). "'Possessing' means exercising control of something" and "may be direct physical custody . . . or it may be constructive . . . ." 2012 *MCM*, pt. IV, ¶ 68b.c.(5).

### 3. Analysis

Appellant contends his re-prosecution for Specification 1 of the Charge (wrongful possession of child pornography) was barred by the constitutional prohibition on double jeopardy. He argues Specification 1 was facially multiplicious with Specification 2 (wrongful distribution of child pornography). Therefore, he reasons, because the original court-martial acquitted him of wrongful distribution of child pornography, and this court's prior opinion expunged the guilty verdict as to the lesser included offense of possession (as well as to the lesser included offense of attempted distribution), jeopardy both attached and terminated as to Specification 1. However, we find no double jeopardy violation.

We agree with Appellant, and the Government also appears to agree, that Specification 1 is multiplicious with Specification 2. Both specifications identify identical locations and time spans for the alleged offenses. Neither specification identifies specific files or items constituting the child pornography in question. Moreover, in order to "distribute" child pornography—*i.e.*, to deliver it to the possession of another—it is necessary to exercise some control over it either physically or constructively—*i.e.*, to "possess" it. *See* 2012 *MCM*, pt. IV, ¶¶ 68b.c.(3), (5).

However, the Government is not prohibited from charging multiplicious specifications in the alternative. *Earle*, 46 M.J. at 825. Moreover, at his original court-martial Appellant was convicted of the separately charged lesser included possession offense; he has never been acquitted of it. Jeopardy attached as to the lesser included possession conviction when the military judge received evidence at the original court-martial, but it did not terminate because review of the case was never fully completed. *See* 10 U.S.C. § 844(b); *Driskill*, 84 M.J. at 252. In his initial appeal to this court, Appellant successfully appealed the conviction on grounds unrelated to the sufficiency of the evidence, which is no bar to his re-prosecution for that offense. *See Scott*, 437 U.S. at 90–91. This court's prior opinion and remand to the convening authority may have "expunged" the result of the original court-martial in the sense that the findings of guilty were set aside, but not in any sense that would bar Appellant's re-prosecution for Specification 1 of the Charge.

## B. R.C.M. 707 Speedy Trial

### 1. Additional Background

#### a. Pre-Rehearing Processing

Appellant's original court-martial took place at Patrick Air Force Base, Florida, in June 2019. The original convening command, 14th Air Force, was redesignated as Space Operations Command (SpOC) in December 2019. In 2021, Space Systems Command (SSC) replaced SpOC as the general court-martial convening authority for the host unit of what is now Patrick Space Force Base (SFB).

On 21 July 2022, this court issued its prior opinion setting aside the findings and sentence and returning the record to TJAG for return to an appropriate convening authority. *Matthew*, unpub. op. at *16. On or about 15 August 2022, the Office of the Judge Advocate General delivered this court's opinion to the staff judge advocate (SJA) for SpOC. The case was subsequently referred to the commander of SSC.

On 3 October 2022, the legal office at Patrick SFB confirmed receipt of the record of trial. On 13 October 2022, the Government notified Appellant of the authorization for a full rehearing. The same day, Appellant submitted a request for administrative separation in lieu of court-martial pursuant to Chapter 6 of the Department of the Air Force Instruction (DAFI) 36-3211, *Military Separations*. On 27 October 2022, the convening authority at SSC ordered a rehearing.

On 5 December 2022, the convening authority disapproved Appellant's request for administrative separation and directed the Air Force Personnel Center (AFPC) to reassign Appellant to an active duty unit at Patrick SFB. On 7 December 2022, AFPC attached Appellant to a squadron at Patrick SFB and

established a report date of 6 January 2023. On 15 December 2022, the Government notified Appellant of his recall from excess leave and permanent change of station authorization.

Appellant demanded speedy trial on 22 December 2022.

On 20 January 2023, the convening authority excused 95 days of delay, including the period from 3 October 2022 until 5 January 2023, for purposes of the R.C.M. 707 speedy trial requirement.

Appellant was arraigned on 31 January 2023.

### b. Defense R.C.M. 707 Motion to Dismiss

After the arraignment, the Defense moved to dismiss the Charge and specifications for violation of R.C.M. 707. The Defense contended the 120-day speedy trial "clock" began on or about 15 August 2022, when SpOC received this court's prior opinion authorizing a rehearing. *See Matthew*, unpub. op. at *16. In addition, the Defense contended the convening authority "abused his discretion in excusing a 95-day delay where no special circumstance caused the delay," and that the "[G]overnment's *ex parte* application for approval of delay and the [c]onvening [a]uthority's after-the-fact excusal of the delay" were "indicia of abuse of discretion." Because the R.C.M. 707 clock began on 15 August 2022 and the 95-day excusal was improper, the Defense concluded, the 120-day standard was greatly exceeded before Appellant was arraigned on 31 January 2023.

In response, the Government argued the R.C.M. 707 speedy trial clock did not start until 3 October 2022, when the record of trial was delivered to the legal office at Patrick SFB. Therefore, Appellant's arraignment on 31 January 2023 was on the 120th day and met the R.C.M. 707 standard. The Government further argued the convening authority's excusal of 95 days was reasonable and not an abuse of discretion.

The military judge denied the motion to dismiss. She agreed with the Government that the speedy trial clock began to run on 3 October 2022, when the convening authority received the record of trial; therefore, she found, Appellant was arraigned within 120 days as required by R.C.M. 707, regardless of the convening authority's exclusion of time.[6] In addition, the military judge found the convening authority excluded time "necessary to ensure [Appellant's]

---

[6] The military judge's written ruling contains an apparent typographical error. Her findings of fact erroneously refer to Appellant being arraigned on 24 January 2023. However, the military judge's conclusions of law refer to Appellant's arraignment on the correct date, 31 January 2023. We find this error does not substantially influence our review of this issue.

availability for trial" in accordance with R.C.M. 707(c), implying she found no abuse of discretion.

Appellant subsequently entered a PTA with the convening authority, agreeing to conditionally plead guilty to the Charge and Specification 1, but preserving appellate review of, *inter alia*, the military judge's denial of the R.C.M. 707 motion.

**2. Law**

In general, "[t]he accused shall be brought to trial within 120 days after the earlier of: [p]referral of charges; [t]he imposition of restraint . . . ; or [e]ntry on active duty under R.C.M. 204." R.C.M. 707(a). However,

> [i]f a rehearing is ordered or authorized by an appellate court, a new 120-day time period under this rule *shall begin on the date that the responsible convening authority receives the record of trial and the opinion authorizing or directing a rehearing*. An accused is brought to trial within the meaning of this rule at the time of arraignment under R.C.M. 904 or, if arraignment is not required . . . at the time of the first session under R.C.M. 803.

R.C.M. 707(b)(3)(D) (emphasis added). "[F]ailure to comply with this rule will result in dismissal of the affected charges," with or without prejudice. R.C.M. 707(d), (1); *United States v. Heppermann*, 82 M.J. 794, 803 (A.F. Ct. Crim. App. 2022).

"All . . . pretrial delays approved by a military judge or the convening authority shall be . . . excluded" for purposes of "determining whether the [120-day] period . . . has run." R.C.M. 707(c); *see also United States v. Guyton*, 82 M.J. 146, 151 (C.A.A.F. 2022) (quoting R.C.M. 707(c)). "[A] 'delay' under R.C.M. 707 [i]s 'any interval of time between events.'" *United States v. Proctor*, 58 M.J. 792, 795 (A.F. Ct. Crim. App. 2003) (quoting *United States v. Nichols*, 42 M.J. 715, 721 (A.F. Ct. Crim. App. 1995)). R.C.M. 707 does not prohibit after-the-fact approval of delays nor *ex parte* requests for excludable delay. *Guyton*, 82 M.J. at 151 (quoting *United States v. Thompson*, 46 M.J. 472, 475 (C.A.A.F. 1997)); *Heppermann*, 82 M.J. at 803.

We review alleged R.C.M. 707 violations de novo. *Guyton*, 82 M.J. at 151 (citation omitted); *Heppermann*, 82 M.J. at 803 (citation omitted). However, "[w]e give substantial deference to findings of fact made by the military judge and will not overturn such findings unless they are clearly erroneous." *United States v. Fujiwara*, 64 M.J. 695, 697 (A.F. Ct. Crim. App. 2007) (citations omitted). We review a decision to approve a delay and exclude time from the 120-day period pursuant to R.C.M. 707(c) for an abuse of discretion. *See United States v. Lazauskas*, 62 M.J. 39, 41–42 (C.A.A.F. 2005). "An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the

court's decision is influenced by an erroneous view of the law." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citation omitted).

### 3. Analysis

The record indicates the convening authority received the record of trial on 3 October 2022. Therefore, in accordance with R.C.M. 707(b)(3)(D), this marks the earliest date the 120-day speedy trial clock would have begun to run for purposes of the rehearing. Appellant's arraignment occurred on 31 January 2023, exactly 120 days later. Therefore, the Government brought Appellant to trial for purposes of R.C.M. 707 within 120 days, and no violation of the rule occurred.

However, Appellant contends the 120-day clock actually began to run on 15 August 2022, the date SpOC received this court's opinion authorizing a rehearing. He cites DAFI 51-201, *Administration of Military Justice*, ¶ 26.8 (14 Apr. 2022),[7] which provides in part: "Receipt of decision by the SJA of the original convening authority (or the current convening authority if the original convening authority no longer exists) triggers the speedy trial clock for both rehearings on findings and rehearings on sentence only." Appellant argues the commander of SpOC was the "current convening authority" when the Office of the Judge Advocate General delivered the opinion to SpOC, and that R.C.M. 707 does not provide that the subsequent transfer of the case to another convening authority "resets" the clock. Moreover, Appellant notes DAFI 51-201, ¶ 26.8 provides the 120 days begins to run upon receipt of the appellate decision, without reference to delivery of the record of trial. Appellant further contends, as he did at his court-martial, the convening authority's excusal of 95 days of delay was an invalid blanket exclusion of time that was unwarranted by the circumstances and was an abuse of discretion. Accordingly, as the Defense argued before the military judge, Appellant contends the Government exceeded the 120-day R.C.M. 707 speedy trial clock, requiring the findings to be set aside and the charges dismissed, with or without prejudice.

We are not persuaded DAFI 51-201, ¶ 26.8 alters the two R.C.M. 707(e) requirements to start the 120-day clock for a rehearing. "The military has a

---

[7] Appellant's brief purports to cite "the current version of DAFI 51-201, para. 26.8." Based on the paragraph reference, Appellant appears to be referring to the 14 April 2022 version of the instruction. However, we note that at the time Appellant submitted his brief on 28 May 2024, a new version of DAFI 51-201 had gone into effect. DAFI 51-201, *Administration of Military Justice* (24 Jan. 2024). Although it was not in effect at the times relevant to the instant appeal, we observe this newest version of DAFI 51-201 provides at ¶ 26.9 that the speedy trial clock begins once the responsible convening authority or a special trial counsel, as applicable, receives both the record of trial and the opinion authorizing or directing a rehearing.

hierarchical scheme as to rights, duties, and obligations," whereby the Manual for Courts-Martial takes precedence over service regulations. *United States v. Romano*, 46 M.J. 269, 274 (C.A.A.F. 1997) (citation omitted). To the extent a service regulation provides additional "rights" to a servicemember, those "rights may not conflict with a higher source." *Id*. R.C.M. 707(b)(3)(D) provides the 120-day clock for a rehearing begins when the convening authority has received *both* the appellate court decision *and* the record of trial. We find DAFI 51-201, ¶ 26.8 is best understood not as contradicting R.C.M. 707(b)(3)(D), but as providing additional guidance as to how one of the two criteria is to be interpreted, *i.e.*, receipt of the appellate decision. Specifically, DAFI 51-201, ¶ 26.8 explains the Rule's reference to "the responsible convening authority" means receipt by either "the original convening authority" or, if the original convening authority no longer exists, "the current convening authority." We do not understand the meaning of the provision is to dispense with the R.C.M. 707(b)(3)(D) requirement that the record of trial also be received in order to start the speedy trial clock. *Cf. United States v. Kelly*, 77 M.J. 404, 407 (C.A.A.F. 2018) (quoting *United States v. Christian*, 63 M.J. 205, 208 (C.A.A.F. 2006)) (explaining courts "typically seek[ ] to harmonize independent provisions of a statute").

Because the Government initiated the rehearing within 120 days of the commencement of the speedy trial clock on 3 October 2022, it is unnecessary to address the convening authority's exclusion of time.

## C. Article 63, UCMJ

### 1. Law

Article 63, UCMJ (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)),[8] provides that "[u]pon a rehearing . . . no sentence in excess of or more severe than the original sentence may be approved." As a general rule, "offenses on which a rehearing . . . has been ordered shall not be the basis for an approved sentence in excess of or more severe than the sentence ultimately approved by the convening or higher authority following the previous trial or rehearing." R.C.M. 810(d)(1). "In adjudging a sentence not in excess of or more severe than one imposed previously, a court-martial is not limited to adjudging the same or a lesser amount of the same type of punishment formerly adjudged." *United States v. Turner*, 34 M.J. 1123, 1125 (A.F.C.M.R. 1992) (quoting R.C.M. 810(d), Discussion (*Manual for Courts-Martial, United States* (1984 ed.))). "[T]he application of the Article 63[, UCMJ,] limitation in any case

---

[8] Based on the date of the offense, the version of Article 66, UCMJ, in the 2016 *MCM* applies in this case.

cannot be reduced to a specific formula." *United States v. Altier*, 71 M.J. 427, 428 (C.A.A.F. 2012) (citations omitted).

A general court-martial sentence that includes confinement for more than six months, or for any period of confinement in addition to a dishonorable or bad-conduct discharge or dismissal, results in forfeiture of all pay and allowances during any period of confinement or parole. 10 U.S.C. §§ 858b(a)(1), (2).

**2. Analysis**

As described above, Appellant's first court-martial convicted him of one specification of wrongful possession of child pornography on divers occasions and one specification of attempted wrongful distribution of child pornography on divers occasions, in violation of Articles 134 and 80, UCMJ, respectively. Appellant was originally sentenced to a dishonorable discharge, confinement for 17 months, and reduction to the grade of E-1. At his rehearing, the military judge found Appellant guilty of one specification of wrongful possession of child pornography on divers occasions and sentenced him to a bad-conduct discharge, confinement for 12 months, forfeiture of all pay and allowances for 12 months, and reduction to the grade of E-1.

Appellant contends the rehearing sentence violates Article 63, UCMJ, in two respects. First, he contends the adjudged forfeiture of all pay and allowances for 12 months resulted in a sentence impermissibly "in excess of" his original sentence, which included no adjudged forfeiture of pay or allowances. Second, Appellant contends the adjudged 12 months in confinement renders his rehearing sentence "more severe than" his original sentence which included 17 months of confinement because it represented a greater percentage of the maximum imposable term of confinement, which was only 10 years at the rehearing as compared to 30 years at the original trial. *See* 2012 *MCM*, pt. IV, ¶¶ 4.e., 68b.e. We address each argument in turn.

With regard to the adjudged forfeitures, we first note Article 63, UCMJ, applies to the "sentence" rather than to individual punishments. Moreover, the applicable precedent in this area indicates it is the original and rehearing sentences as a whole that are to be compared for purposes of Article 63, UCMJ, rather than the individual sentence components. *See, e.g.*, *Turner*, 34 M.J. at 1125. For example, in *Turner*, our predecessor court cited *United States v. Kelley*, 17 C.M.R. 259 (C.M.A. 1954), and *United States v. Smith*, 31 C.M.R. 181, 182 (C.M.A. 1961), for the proposition that where the original sentence included a bad-conduct discharge, any punishment less severe than a bad-conduct discharge could be adjudged at a rehearing, regardless of the fact it had not been imposed at the original court-martial. *Turner*, 34 M.J. at 1125. It follows that forfeitures being adjudged in the rehearing but not in the original proceeding does not necessarily indicate a violation of Article 63, UCMJ; a

more holistic assessment of each entire sentence is required. Notably, Appellant's original punishment of a dishonorable discharge was more severe than his rehearing punishment of a bad-conduct discharge, *see United States v. Mitchell*, 58 M.J. 446, 449 (C.A.A.F. 2003), and his original punishment of confinement for 17 months was more severe than his rehearing punishment of confinement for 12 months. In addition, we note the adjudged forfeiture at the rehearing would have little or no practical effect on Appellant, because Article 58b(a), UCMJ, 10 U.S.C. § 858b(a), would also have had the effect of forfeiture of all of Appellant's pay and allowances during his 12-month term of confinement (or parole).

With regard to the percentages of the maximum imposable sentences adjudged at each court-martial, Article 63, UCMJ, prohibits a rehearing "sentence in excess of or more severe than the original sentence." This indicates a direct comparison of the sentences from each proceeding. There is no "specific formula" for determining the relative severity of sentences, *Altier*, 71 M.J. at 428, to include no requirement to calculate relative percentages of maximum confinement terms where there has been a change in the convicted offenses for which the accused was sentenced. Appellant draws our attention to no case applying such an analysis. With this understanding, we find 12 months of confinement is in fact less severe than 17 months of confinement.

Accordingly, we find Appellant's rehearing sentence to a bad-conduct discharge, confinement for 12 months, total forfeiture of pay and allowances for 12 months, and reduction to the grade of E-1 is not in excess of or more severe than his original sentence to a dishonorable discharge, confinement for 17 months, and reduction to the grade of E-1 in violation of Article 63, UCMJ.

Appellant makes two related arguments that warrant brief mention. First, he contends the SJA's advice to the convening authority that the latter "d[id] not have the authority to disapprove, commute, or suspend, in whole or in part," Appellant's term of confinement was incorrect. In general, such advice is a correct statement of the limitation on a convening authority's ability to modify a sentence of confinement for more than six months. *See* 10 U.S.C. § 860(c)(4)(A) (2016 *MCM*). However, Appellant contends such advice was incorrect in this case because the convening authority had an independent duty under Article 63, UCMJ, not to approve a sentence in excess of the one adjudged at the original court-martial. As described above, Appellant contends his 12-month term of confinement from the rehearing was in excess of his original 17-month term of confinement when measured as a percentage of the maximum imposable sentence. However, as we have determined Appellant's rehearing sentence did not violate Article 63, UCMJ, the convening authority had no cause to modify the sentence on that basis. Accordingly, the usual

Article 60, UCMJ, limitations on the convening authority applied, and Appellant is not entitled to relief on the basis of the SJA's advice.

Second, at the conclusion of Appellant's argument with respect to Article 63, UCMJ, he includes the following: "If this Court declines to give life to the phrase 'more severe' in Art[icle] 63, UCMJ, this Honorable Court should find, for the same reasons as above, that the sentence is inappropriate under Article 66, UCMJ[, 10 U.S.C. § 866,] and re-assess it to reach the same result." Here Appellant invokes this court's duty to affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Having given such individualized consideration to Appellant, we conclude Appellant's sentence is not inappropriately severe, either in light of the sentence originally adjudged or on any other basis.

## D. Post-Trial Delay

### 1. Law

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). In *Moreno*, the CAAF established a presumption of facially unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial," "where the record of trial is not docketed by the [Court of Criminal Appeals (CCA)] within thirty days of the convening authority's action," or "where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the [CCA]." *Id.* at 142.[9]

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). The CAAF identified three types of cognizable

---

[9] In *United States v. Livak*, 80 M.J. 631 (A.F. Ct. Crim. App. 2020), this court adapted the *Moreno* thresholds for facially unreasonable delay to the new post-trial processing regime that went into effect in 2019. Specifically, *Livak* established an aggregated 150-day standard for facially unreasonable delay from sentencing to docketing with the CCA for cases referred to trial on or after 1 January 2019. *Id.* at 633. However, the original *Moreno* standards apply in Appellant's case.

prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

We review de novo an appellant's entitlement to relief for post-trial delay. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *Moreno*, 63 M.J. at 135).

### 2. Analysis

Appellant contends he is "due relief for post-trial delay," citing the 18-month *Moreno* standard for facially unreasonable appellate delay. *See Moreno*, 63 M.J. at 142. He specifies four particular periods of delay which he contends are the responsibility of either the Government or of this court. First, Appellant cites "the [G]overnment's loss of the record of trial," referring to the court reporter's loss of the audio recording of the arraignment of his original court-martial, which ultimately resulted in this court setting aside the findings and sentence from that proceeding. Second, Appellant cites the lapse of time from when his original court-martial was initially docketed with this court on 23 October 2019 until it issued its prior opinion on 21 July 2022. Third, Appellant cites the delay between this court's return of the record to TJAG and his arraignment for the rehearing on 31 January 2023, addressed in more detail in our analysis of the alleged violation of R.C.M. 707 *supra*. Fourth, Appellant cites the delay between his rehearing sentencing on 30 May 2023 and the docketing of the record with this court on 28 March 2024. Appellant does not allege any specific prejudice from the delays he cites.

As an initial matter, we note Appellant appears to analyze the entire period of time from his original sentencing on 20 June 2019 onward as one extended post-trial period to be measured against the *Moreno* standards for facially unreasonable delay, and in particular the 18-month appellate delay standard. We disagree. In *Moreno*, the CAAF stated it would "apply a presumption of unreasonable delay where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the [CCA]." *Id.* This court previously rendered a decision on Appellant's appeal of his original court-martial, which resolved in his favor one of the issues he had raised to this court. *Matthew*, unpub. op. at *16. Therefore, we find there are two distinct post-trial and appellate periods for purposes of our *Moreno* analysis.

16

First we consider the post-trial and appellate delay preceding this court's prior opinion. The original convening authority took action on the sentence on 13 October 2019, less than 120 days from sentencing, and the record was docketed with this court on 23 October 2019, less than 30 days from action. Accordingly, there was no facially unreasonable post-trial delay at that point under *Moreno*, 63 M.J. at 142. However, this court did exceed the 18-month *Moreno* standard for appellate delay.[10] Because Appellant has not alleged qualifying prejudice under *Moreno*, and because we find none, a due process violation would exist only if the delay was so egregious as to negatively affect public perception of the fairness and integrity of the military justice system. *Toohey*, 63 M.J. at 362. We find it was not so egregious. Several factors contribute to this conclusion, including but not limited to the following. Appellant moved for and was granted eight enlargements of time in which to file his assignments of error. According to the defense filings, Appellant was released from confinement prior to the sixth motion for enlargement of time, submitted on 12 June 2020, well before he even submitted his original assignments of error. Accordingly, at no point has Appellant suffered oppressive incarceration as a result of appellate delay. In addition, over two months of delay was attributable to this court returning the record in an effort to correct the incomplete transcript; although this delay was not attributable to Appellant, remand was a reasonable measure to address a deficiency specifically raised by the Defense. Furthermore, this court's opinion set aside the findings and sentence in their entirety, leaving no sentence against which to award relief.

The next period of delay Appellant cites—the delay between this court's return of the record to TJAG and Appellant's arraignment for the rehearing—is not in fact a period of post-trial delay. At that point, Appellant's first appeal had been resolved in his favor, and his case was then in a pretrial posture preceding his rehearing. Delays during this phase are properly evaluated in light of pretrial speedy trial requirements, such as the alleged R.C.M. 707 violation Appellant raised separately which we analyzed *supra*, rather than under *Moreno*. Accordingly, we find no violation of Appellant's right to timely post-trial and appellate review on this basis.

Turning to the delay following Appellant's rehearing, Appellant was sentenced for a second time on 30 May 2023, and the convening authority took action on the rehearing 248 days later on 2 February 2024. This period significantly exceeded the 120-day *Moreno* standard for a facially unreasonable delay. In addition, Appellant's record was docketed with this court on 28 March

---

[10] We assume for purposes of our analysis that this court's order 23 December 2020 order returning the record to TJAG for corrective action was not a "decision" on the case within the meaning of *Moreno*, 63 M.J. at 142.

2024, 55 days after the convening authority took action, which exceeds the 30-day *Moreno* standard. Accordingly, we have considered the four *Barker* factors; but once again, because Appellant has not identified any cognizable prejudice and we perceive none, no due process violation exists unless the delay was so egregious as to impugn the fairness and integrity of the military justice system. *Toohey*, 63 M.J. at 362. As reasons contributing to the delay, the Government cites low paralegal manning in the servicing legal office; a complicated earlier court-martial that took priority in post-trial processing over Appellant's re-hearing; and 61-day delay in delivering the record of trial to civilian trial defense counsel's overseas location due to armed conflict in the region. Although these cited reasons do not provide a complete or convincing explanation for the facially unreasonable delays, in the absence of prejudice to Appellant we do not find the delay so egregious as to constitute a due process violation.

Furthermore, recognizing our authority under Article 66, UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude no such relief is warranted.

## E. Incomplete Record

### 1. Additional Background

Upon reviewing the record, this court noted an apparent omission in the record the parties did not identify. At one point in the court-martial, trial counsel offered for the record Appellate Exhibit (AE) XI, the Government's response to the Defense's motion to dismiss the Charge and specification for the alleged R.C.M. 707 violation, which we have analyzed *supra*. After some initial confusion and clarification by the military judge, trial counsel identified AE XI as a 27-page document, including 21 pages of attachments. However, the version of AE XI contained in the original record consists of only the six-page government response, which lists nine attachments that are not included.

On 30 September 2024, this court issued an order to the Government to "show good cause as to why this court should not remand the record for correction under [R.C.M.] 1112(d), or take other corrective action." In response, the Government moved to attach a 1 October 2024 declaration from the superintendent of the Patrick SFB legal office with an electronic version of what he asserts to be the 27-page version of AE XI, including the attachments. The declaration states this version was provided via email to the Government Trial and Appellate Operations Division on 1 October 2024. The Government's response to the show cause order asserts "there is no utility in returning the record for correction" at this point because this court can now review the

missing attachments and "assess whether Appellant was prejudiced by their omission." The Government further contends additional "delay is unnecessary in this case especially considering Appellant alleged unreasonable post-trial delay in his assignments of error." Appellant did not oppose the Government's motion to attach or otherwise respond to the Government's response to the show cause order. This court granted the Government's motion to attach.

**2. Law**

A complete record of the proceedings, including all exhibits, must be prepared for any general court-martial that results in a punitive discharge or more than six months of confinement. Article 54(c)(2), UCMJ, 10 U.S.C. § 854(c)(2); *see also* R.C.M. 1112(b)(6) (providing the record of trial shall include all exhibits). Whether a record of trial is complete is a question of law we review de novo. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014) (citation omitted).

"[A] substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the [G]overnment must rebut." *United States v. Harrow*, 62 M.J. 649, 654 (A.F. Ct. Crim. App. 2006) (citation omitted), *aff'd*, 65 M.J. 190 (C.A.A.F. 2007). However, "[i]nsubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000) (holding that four missing prosecution exhibits were insubstantial omissions when other exhibits of similar sexually explicit material were included). We approach the question of what constitutes a substantial omission on a case-by-case basis. *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999) (citation omitted). "In assessing either whether a record is complete . . . the threshold question is 'whether the omitted material was "substantial," either qualitatively or quantitatively.'" *Davenport*, 73 M.J. at 377 (quoting *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982)) (additional citation omitted). "Omissions are quantitatively substantial unless 'the totality of omissions . . . becomes so unimportant and so uninfluential when viewed in the light of the whole record, that it approaches nothingness.'" *Id.* (omission in original) (quoting *United States v. Nelson*, 13 C.M.R. 38, 43 (C.M.A. 1953)).

**3. Analysis**

We begin with a clarification of the significance of this court granting the Government's motion to attach the declaration and purported correct version of AE XI. As we explained in similar circumstances in another case:

> We understand this to mean that we can consider the [attached matter] in deciding whether the Government has rebutted the presumption of prejudice on appeal. To be clear, we are not holding that the record of trial is now complete . . . . If the

> Government sought to make the record of trial complete, it should have requested our court order a certificate of correction.

*United States v. King*, No. ACM 39583, 2021 CCA LEXIS 415, at *29 (A.F. Ct. Crim. App. 16 Aug. 2021) (unpub. op.), *aff'd*, 83 M.J. 115 (C.A.A.F. 2023).

In the instant case, we find the omission was substantial. The missing attachments presumably formed part of the basis for the military judge's findings of fact in her ruling on the R.C.M. 707 motion to dismiss, which was itself significant for our analysis of Appellant's assignment of error. However, we find the presumption of prejudice has been rebutted under the circumstances of this case. The facts that control our resolution of the R.C.M. 707 issue—notably including *inter alia* that the record of trial was delivered to Patrick SFB on 3 October 2022—are established by other exhibits in the record. Accordingly, we are able to complete our Article 66, UCMJ, review, and Appellant has not been prejudiced by the omission.

**F. Court-Martial Order**

The 2 February 2024 court-martial order promulgating the results of the rehearing contains an error. The order incorrectly indicates Appellant pleaded "not guilty" to Specification 2 of the Charge, which was subsequently "Withdrawn and Dismissed with Prejudice." As described *supra* in relation to Appellant's assertion of double jeopardy, the military judge dismissed Specification 2 with prejudice prior to Appellant entering his pleas. Appellant did not enter a plea of "not guilty," and the specification was not "withdrawn." Accordingly, we direct correction of the court-martial order in our decretal paragraph.

### III. CONCLUSION

We direct publication of a new court-martial order with the following corrections with regard to Specification 2 of the Charge: for the "Plea," delete "NG" and replace with "None;" and for the "Finding," delete "Withdrawn and Dismissed with Prejudice" and replace with "Dismissed with Prejudice." The findings and sentence as approved are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016 *MCM*). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court